JOINER, Judge.
Jimmy Williams, Jr., who was convicted in the Montgomery Circuit Court of capital murder and was sentenced to life imprisonment without the possibility of parole, filed a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P., challenging his. sentence; specifically, Williams — who was 15 years old at the time of his offense — argued that his sentence is unconstitutional in light of the recent decision of the United States Supreme Court in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 2475, 183 L.Ed.2d 407 (2012). We affirm the circuit court’s summary dismissal of Williams’s Rule 32 petition.

Facts and Procedural History

Jimmy Williams, Jr., was convicted of capital murder, see § 13A-5-40(a)(2), Ala. Code 1975, and of conspiracy to commit first-degree robbery, see § 13A-4-3, Ala. Code 1975. Williams, who was 15 years of age at the time of the offense, was sentenced to life in prison without the possibility of parole for the capital-murder conviction and was sentenced to 20 years’ imprisonment for the conspiracy-to-eom-mit-robbery conviction.
This Court affirmed Williams’s convictions and sentences on direct appeal. See Williams v. State, 830 So.2d 45 (Ala.Crim.App.2001). Williams sought certiorari review in the Alabama Supreme Court; that Court, however, ultimately quashed the writ of certiorari it had issued,' and issued a certificate of judgment in April 2002.
In June 2013, Williams filed in the circuit court a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P., his first such petition. In his petition, *201 Williams sought “relief from his unconstitutional sentence of life without parole.” Specifically, Williams argued that, pursuant to Miller v. Alabama, his life-without-the-possibility-of-parole sentence was unconstitutional, and Williams asked the circuit court, pursuant to Rule 32.1(a), (b), and (c), for a ruling invalidating his sentence, (C. 5.)
In response, the State asserted that Williams’s petition was due to be dismissed. The State asserted that “Miller is not retroactive to cases on collateral appeal,” that Williams’s petition fell outside the scope of Rule 32,1, that Williams’s petition was without ■ merit, and that Williams’s claims were precluded pursuant to Rule 32.2(a)(3) and (a)(5), Ala, R.Crim. P., as claims that could have been, but were not, raised at trial or on direct appeal. (C. 17.) In response, Williams asserted that Miller was, in fact, retroactive. The circuit court agreed with the State and entered an order, drafted by the State, dismissing Williams’s petition. (C. 59-62.)

Standard of Review

The facts in this case are not in dispute, and the question before this Court — whether the rule announced in Miller is retroactive — is a purely legal one; accordingly, our standard of review is de novo. Acra v. State, 105 So.3d 460, 464 (Ala.Crim.App.2012).
In Miller, the United States Supreme Court held that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders,” — U.S. at-, 132 S.Ct. at 2469, and that the Eighth Amendment “mandates ... that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty.” — U.S. at -, 132 S.Ct. at 2471.

Analysis

In addressing Williams’s appeal, we first ask whether Williams’s Miller claim may be raised under Rule 32.1, Ala. R.Crim. P. If it is, we then address whether Williams is entitled to relief on his claim that Miller is retroactive.[1]
I. Retroactive Application o/ Miller
A Grounds for Relief
“Rule 32 provides a limited scope of review,” and a petitioner is limited by the grounds identified in Rule 32.1. Acra, 105 So.3d at 464. In his petition, Williams asserted that he was entitled to relief under Rule 32.1(a), (b), and (c), Ala. R.Crim. P,
Regarding Rule 32.1(b) and (c)— that Williams’s sentence is illegal and that the circuit court did not have jurisdiction to sentence him to life imprisonment without the possibility of parole — we do not find that these subsections apply. First, as the language of Miller makes clear, a life-imprisonment-without-the-possibility-of-parole sentence for a juvenile offender is not patently illegal. Miller, — U.S. at -, 132 S.Ct. at 2469 (noting that life-without-parole sentences are not foreclosed by Miller)-, see also Mosley v. State, 986. So.2d 476, 477 (Ala.Crim.App.2007) (“A sentence that exceeds the maximum allowed by law is an illegal sentence affecting the trial court’s jurisdiction.”). Second, even if Miller foreclosed such a sentence, nothing in that decision implicates the jurisdiction of the circuit court to sentence Williams. See generally Ex parte Seymour, 946 So.2d 536 (Ala.2006).
*202 Nevertheless, Williams’s .claim — that he is constitutionally entitled to a new sentencing proceeding under Miller — is a claim that may be raised under Rule 32.1(a), Ala. R.Crim. P. Specifically, it is a claim alleging that “[t]he constitution of the United States— requires ... a new sentencing proceeding.” Rule 32.1(a), Ala. R.Crim. P. Accordingly, Williams has asserted a claim that seeks appropriate relief under Rule 32.1 (a), Ala. R. Crim.. P.
B. Application of Miller to Williams
We must next determine whether Williams is entitled to relief on his Miller claim; this question turns on the retroac-tivity of the Miller decision.

Retroactivity

“In Teague [v. Lane, 489 U.S. 288 (1989) ], and subsequent cases, [the United States Supreme Court] ... laid out the framework to be used in determining whether a rule announced in one of [its] opinions should be applied retroactively to judgments in criminal cases that áre already final on direct review.” Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).[2]
“Using this framework, we first. ask whether the rule announced in an opinion is a new rule or whether it is an old rule. ‘[A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.’ Id. (emphasis added). A new rule, however, may apply to .cases on collateral review if ‘the rule[ ] come[s] within ... the ... exceptions to the general principle that new rules will not be applied on collateral review.’ Saffle v. Parks, 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).”
Acra v. State, 105 So.3d 460, 466 (Ala.Crim.App.2012).
“In this case, it is undisputed that [Williams’s] conviction became final on direct appeal well before [Miller] was decided, , We therefore turn to the question of whether [Miller ] applied. an old rule or announced a new one.” Whorton, 549 U.S. at 416. “[A]n old rule applies both on direct and collateral review” and, thus, is retroactive. Whorton, 549 U.S. at 416. “A new rule applies only to cases that still are on direct review, unless one of two exceptions applies.” Chaidez v. United States, 655 F.3d 684, 689 (7th Cir.2011).
If the Miller rule is a new rule, this Court must then determine whether “the rule[ ] come[s] within ... the ... exceptions to the general principle that new rales will not be applied on collateral review.” Saffle v. Parks, 494 U.S. 484, 494, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). “If the holding in [Miller ] applies retroactively to ■ cases on collateral review, [Williams] is not excluded from relief by the grounds of preclusion set out in Rule 32.2, Ala. R.Crim. P.” Acra, 105 So.3d at 465. Finally — although- not part of the Teague,. analysis — we address Williams’s argument that the rule.announced in Mil *203 ler is retroactive because that rule was applied to a petitioner’s claim in postcon-viction proceedings in Jackson v. Hobbs, the companion case decided in the same opinion as Miller.

a. Old Rule or New Rule

“[A] néw rule [i]s a rule that ‘breaks new. ground,’ ‘imposes a new obligation on the States or the Federal Government,’ or was not ‘dictated by precedent existing at the time the defendant’s conviction became final.’ ” Saffle, 494 U.S. at 488. “[A] rule is old if a ‘court considering the defendant’s claim at the'time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution.’” United States v. Chang Hong, 671 F.3d 1147, 1153 (10th Cir.2011) (quoting O’Dell v. Netherlands 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997)).
“It seems evident from Supreme Court precedent that [a case] cannot be an old rule simply because existing case law ‘inform[ed], or even control[led] or governed],’ the analysis. Saffle, 494 U.S. at 488, 110 S.Ct. 1257. Nor will the rule of [a case] be deemed old because precedent lent ‘general support’ to the rule it established, Sawyer[ v. Smith], 497 U.S. [227] at 236, 110 S.Ct. 2822 [ (1990) ], or because it represents ‘the most reasonable ... interpretation of general law,’ Lambrix v. Singletary, 520 U.S. 518, 538, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). [A case] can only be considered an old rule if Supreme Court precedent ‘compel[led]’ the result. Saffle, 494 U.S. at 490, 110 S.Ct. 1257.”
Chaidez, 655 F.3d at 689-90. The “task [of discerning a new rule from an old one] is a ‘difficult’ one where, as here, the decision at issue ‘extends the reasoning of ... prior cases,’ as opposed to ‘explicitly] overruling ... an earlier holding.’ ” Chai-dez, 655 F.3d at 689 (quoting Saffle, 494 U.S. at 488.
. A's the Pennsylvania Supreme Court has noted, the Miller decision was based on “two ‘strands of precedent.’ ” Commonwealth v. Cunningham, 622 Pa. 543, 81 A.3d 1, 3 (2013) (quoting Miller, — U.S. at —132 S.Ct. at 2463). “The first of these involves the categorical prohibition of certain punishments for specified classes of offenders. The second requires individualized sentencing for defendants facing the death penalty, and, by extension, other of the,most serious penalties.” Id. (footnotes omitted).
The first strand of cases — involving the categorical prohibition of certain punishments — includes cases such as Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding that a sentence of life imprisonment without parole for a non-homicide juvenile offender violates the Eighth Amendment), Kennedy v. Louisiana, 554 US. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (holding that a death sentence for a non-homicide offense is unconstitutional), Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding that a death sentence for a juvenile offender is unconstitutional), and Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding that a death sentence for a mentally retarded defendant is unconstitutional), and Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (holding that a death sentence for juvenile offender who was younger than 16 at time of the offense is unconstitutional).
The second strand of cases — which “require sentencing authorities to consider the characteristics of a defendant and the details of his offense before sentencing him to death,” Miller, — U.S. at -, 132 S.Ct. at 2458-include Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 *204 L.Ed.2d 944 (1976) (holding “that the death sentences imposed upon the petitioners under North Carolina’s mandatory death sentence statute violated the Eighth and Fourteenth Amendments”) (plurality opinion), and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (holding that “[t]o meet constitutional requirements,, a death penalty statute must not preclude consideration of relevant mitigating factors”).
Although thé Miller decision* may have “extended] the reasoning of’ cases that were decided by 'the time Williams’s conviction was final — such as Thompson, Woodson, and Lockett — the sentencing court would not have-had the benefit of more recent decisions — such as Roper, Graham, and Kennedy — which were decided years after Williams was sentenced; accordingly,-we conclude the sentencing court would not “have felt compelled by existing precedent to conclude that the rule [the petitioner] seeks was required by the Constitution.” Chaidez, supra. Accordingly, the rule announced in Miller is not an old rule, but is, instead, á new rule.[3] See State v. Tate, 130 So.3d 829, 835 (La.2013) (“Utilizing'these principles, we find ... Miller establishes a new rule. This is so because when Tate’s conviction became final ... .neither Roper nor Graham, upon which the Miller Court relied, had been decided.”).
- We must next determine whether the new rule announced in Miller falls within one of two exceptions tó nonretroactivity of a new* rule. Chaidez, supra.

b. New-Rule Exceptions

As this Court noted in'Acra,
“ ‘[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a “‘watershed rul[e] of criminal procedure’ implicating the fundamental fairness and accuracy of the criminal proceeding.”’ Whorton, 549 U.S. at 416 (quoting Saffle, 494 U.S. at 495, quoting in turn Teague, 489 U.S. at 311).”
Acra, 105 So.3d at 466. Williams argues both exceptions alternatively — that is, he contends that Miller established either a substantive rule or a “ ‘watershed’ ” procedural rule.
Although this is an issue of first impression for this Court, other courts have addressed this question and have reached different conclusions as to the type of rule Miller announced. The Iowa Supreme Court succinctly recognized the competing views on the type of rule announced in Miller: >
“The competing arguments over the retroactivity of Miller essentially narrow the inquiry to whether the decision merely established a new penalty-phase procedure for courts to follow before imposing a life sentence without parole for crimes committed by juveniles or whether the decision established either a substantive rule of law or one that implicates fundamental fairness and accuracy of the criminal proceeding.”
State v. Ragland, 836 N.W.2d 107, 114 (Iowa 2013). As the Ragland court recognized, the issue here begins with the question of whether the “new” rule announced in Miller is substantive or procedural.
In Chambers v. State, 831 N.W.2d 311 (Minn.2013), the Minnesota Supreme Court discussed “the difference between substantive and procedural rules” for the purposes of an analysis under Teague:
*205 “On the one hand, a new rule is ‘substantive’ if the rule ‘narrow[s] the scope of a criminal statute by interpreting its terms,’ or ‘placets] particular conduct or persons covered by the statute beyond the State’s power to punish.’ Schriro [v. Summerlin], 542 U.S. [348] at 351-52, 124 S.Ct. 2519 [(2004)] (emphasis added) (citations omitted). In Penry v. Lynaugh, the Court explained that the definition of a ‘substantive’ rule for purposes of the first Teague exception was not limited to new rules that placed certain conduct completely beyond the State’s power to punish. 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds, Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Instead, a substantive rule also includes new rules that place a certain class of individuals beyond the State’s power to punish by death. Id. In other words, substantive rules ‘apply retroactively because they “necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal ” or faces a punishment that the law cannot impose upon him’ because of his status or offense. Schriro, 542 U.S. at 352, 124 S.Ct. 2519 (emphasis added) (quoting Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).
“The Court in Penry explained that in both situations ‘the Constitution itself deprives the State of the power to impose a certain penalty, and the finality and comity concerns’ underlying the ret-roactivity doctrine ‘have little force.’ 492 U.S. at 330, 109 S.Ct. 2934 (emphasis added). More specifically, the Court wrote: ‘[T]he first exception set forth in Teague should be understood to cover not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.’ Id. The Court explained that if it ‘held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons such as Pen-ry regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonre-troactivity and would be applicable to defendants on collateral review.’ Id. (emphasis added). Courts have uniformly held, consistent with Penry, that the categorical sentencing bans announced in Graham and Roper satisfy the substantive rule exception of the Teague doctrine.
“On the other hand, rules that ‘regulate only the manner of determining the defendant’s culpability are procedural.’ Schriro, 542 U.S. at 353, 124 S.Ct. 2519. ‘They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.’ Id. at 352, 124 S.Ct. 2519. The definition of a procedural rule for purposes of the first Teague exception extends to rules that regulate the manner of determining a defendant’s sentence. Lambrix v. Singletary, 520 U.S. 518, 539, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). In Lambrix, the Court considered whether the rule announced in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), constituted a substantive or procedural rule under the Teague doctrine. 520 U.S. at 526-27, 117 S.Ct. 1517. Under the Espinosa rule, an actor with capital sentencing authority must not be permitted to weigh invalid aggravating circumstances. 505 U.S. at 1082, 112 S.Ct. 2926. The Court in Lambrix held that *206 the Espinosa rule was procedural, not substantive, because it ‘neither decriminalized a class of conduct nor prohibited the imposition of capital punishment on a particular class of persons.’ 520 U.S. at 539, 117 S.Ct. 1517 (quoting Saffle v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)).
“In summary, a new rule regarding sentencing is substantive if it eliminates the power of the State to impose the punishment in question regardless of the procedures followed. Penry, 492 U.S. at 330, 109 S.Ct. 2934. On the other hand, the new rule is procedural if it regulates the manner in which the State exercises its continuing power to impose the punishment in question. Lambrix, 520 U.S. at 539, 117 S.Ct. 1517.”
Chambers, 831 N.W.2d at 326-27 (some citations omitted; some emphasis added).

i Substantive-Rule Exception

Williams first argues that the rule announced in Miller is substantive. He argues that “[b]eeause Miller narrowed the scope of the State’s power to punish with a sentence of life without parole, it is a new substantive rule for Teague purposes and is retroactive to ... Williams.” (Williams’s brief, p. 9.) According to Williams, “Miller undoubtedly narrows the State’s power to punish children with a sentence of life imprisonment without parole.” (Williams’s brief, p. 10.) Williams continues, arguing:
“Miller does not concern solely the ‘manner of determining’ culpability. While it certainly has a procedural component, it changes more than the way in which culpability or punishment is adjudicated. Instead, the rule of Miller invalidates mandatory sentencing regimes, like Alabama’s, that permit only one sentencing outcome, and requires that range of outcomes be changed to include a lesser sentence. By mandating that an alternative sentencing option be available to children convicted of homicide, Miller categorically changes the range of permissible outcomes of the criminal proceeding. That is a substantive change in the law.”
(Williams’s brief, pp. 12-13.) In short, Williams characterizes “the mandatory nature of the sentences at issue in Miller [a]s more accurately characterized as an aspect of the punishment, rather than a procedural mechanism.” (Williams’s brief, p. 14.) In support of his argument, Williams points to decisions from Mississippi, Iowa, Massachusetts, Nebraska, and California as well as decisions from federal circuit and district courts.
In July 2013, the Mississippi Supreme Court in Jones v. State, 122 So.3d 698 (Miss.2013), concluded that Miller announced a new substantive rule and was, therefore, retroactive. Specifically, that court stated:
“Although Miller did not impose a categorical ban on the punishment that the substantive law could impose, it explicitly foreclosed imposition of a mandatory sentence of life without parole on juvenile offenders. By prohibiting the imposition of a mandatory sentence, the new obligation prevents ‘a significant risk that a [juvenile] ... faces a punishment that the law cannot impose on him.’ [Schriro v. Summerlin, 542 U.S. 348, 351-52 (2004).]
“ ‘[Substantive rules ... include[ ] decisions that narrow the scope of a criminal statute by interpreting its terms.’ Id. at 351-52, 124 S.Ct. 2519 (citing Bousley v. United States, 523 U.S. 614, 620-621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). Prior to Miller, everyone convicted of murder in Mississippi was sentenced to life imprisonment and was ineligible for parole. Following Miller, *207 Mississippi’s current sentencing and parole statutes could not be followed in homicide cases involving juvenile defendants. Our sentencing scheme may be applied to juveniles only after applicable Miller characteristics and circumstances have been considered by the sentencing authority. As such,'Miller modified our substantive law by narrowing its application for juveniles.”
Jones, 122 So.3d at 703.
Likewise, in August 2013, the Iowa Supreme Court in Ragland concluded that, although “Miller does mandate a new procedure ..., the procedural rule for a hearing is the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing.” 836 N.W.2d at 115. According to the Iowa Supreme Court, the rule announced in Miller “bar[red] states from imposing a certain type of punishment on certain people.” Ragland, 836 N.W.2d at 115. In so deciding, the court noted that the precedent underlying the Miller decision was generally applied retroactively. See Ragland, 836 N.W.2d at 116 (“More specifically, the cases used by the Court in Miller to support its holding have been applied retroactively on both direct and collateral review.”).
More recently, the Nebraska Supreme Court addressed the retroactivity of the rule announced in Miller. In State v. Mantich, 287 Neb. 320, 842 N.W.2d 716 (2014), the Nebraska Supreme Court decided that the rule announced in Miller was a substantive rule and,, thus, applied to cases on collateral review:
“Miller did not simply change what entity considered the same facts. And Miller did not simply announce a rule that was designed to enhance accuracy in sentencing. Instead, Miller held that a sentencer must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile. Effectively, then, Miller required a sentencer of a juvenile to consider new facts, i.e., mitigation evidence, before imposing a life imprisonment sentence with no possibility of parole. In our view, this approaches what the Court itself held in Schriro [v. Summerlin, 542 U.S. 348 (2004) ], would amount to a new substantive rule: The Court- made a certain fact (consideration of mitigating evidence) essential to imposition of a sentence of life imprisonment without parole. In other words, it imposed a new requirement as to what a sentencer must consider in order to constitutionally -impose life imprisonment without parole on -a juvenile.
“And Miller itself recognized that when mitigating evidence is considered, a sentence of. life imprisonment without parole for • a juvenile should- be rare. This is consistent with'the underlying logic of Miller, based- on Graham, that ‘ “[i]t is- difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose .crime reflects irreparable corruption.’” In essence, Miller ‘amounts tp something close to a de facto substantive holding,’ .because it sets forth the general rule that, life imprisonment without parole should not be imposed upon a juvenile except in the rarest of cases where that juvenile cannot be distinguished from an adult based on diminished capacity or culpability.”
Mantich, 287 Neb. at 340, 842 N.W.2d at 730 (footnotes omitted).
Like Mississippi in Jones, Iowa in Rag-land, and Nebraska in Mantich, courts in Massachusetts, California, and Illinois have applied Miller■ retroactively. See Diatchenko v. District Att’y for Suffolk *208 Dist., 466 Mass. 655, 1 N.E.3d 270 (2013) (“Based on these standards, we conclude that the ‘new’ constitutional rule announced in Miller is substantive and, therefore, has retroactive application to cases on collateral review, including Diatchenko’s case. The rule explicitly forecloses the imposition of a certain category of punishment — mandatory life in prison without the possibility of parole— on a specific class of defendants: those individuals under the age of eighteen when they commit the crime of murder. Its retroactive application ensures that juvenile homicide offenders do not face a punishment that our criminal law cannot constitutionally impose on them.”); In re Rainey, 224 Cal.App.4th 280, 168 Cal.Rptr.3d 719 (2014) (“We conclude Miller applies retroactively to cases on collateral review and further conclude [the petitioner] is entitled to habeas relief.”); People v. Davis, 379 Ill.Dec. 381, 6 N.E.3d 709 (Ill.2014) (agreeing with Illinois “appellate courts” that have “concluded that Miller applies retroactively to cases on collateral review” as a “new substantive rule”).
Williams also points to decisions from various United States Courts of Appeals. The Court of Appeals for the Third Circuit has “authorize[d] [petitioners] to file a successive habeas corpus petition in the district court” on the basis that the respective petitioners “made a prima facie showing that Miller is retroactive.” In re Pendleton, 732 F.3d 280, 282-83 (3d Cir.2013). Regarding its decision, the In re Pendle-ton Court noted:
“In [allowing petitioners to file a successive habeas corpus petition to raise a Miller claim], we join several of our sister courts of appeals. See, e.g., Wang v. United States, No. 13-2426 (2d Cir. July 16, 2013) (granting motion to file a successive habeas corpus petition raising a Miller claim); In re James, No. 12-287 (4th Cir. May 10, 2013) (same); Johnson v. United States, 720 F.3d 720 (8th Cir.2013) (per curiam) (same).”
732 F.3d at 282-83. See also Evans-Garcia v. United States, 744 F.3d 235 (1st Cir.2014) (“In view of the government’s concession, we certify that Evans-Garcia has made a prima facie showing that this rule qualifies as a basis for habeas relief on a second or successive petition, and so we allow him to file his petition with the district court.”).
The Court of Appeals for the Fifth Circuit has apparently split on this issue; at least one panel of the Fifth Circuit Court of Appeals has “authoriz[ed] [a petitioner] to file a successive [28 U.S.C.] § 2255 motion in the district court” for the purpose of asserting a Miller claim. In re Simpson, (No. 13-407218, Feb. 7, 2014) (5th Cir.2014) (not reported in F.3d) (before Higginbotham, Dennis, and Graves, JJ.) (“[T]he Supreme Court’s actions in Miller and the procedural posture of Miller itself satisfy Simpson’s burden to make a prima facie showing that his petition rests on a new rule of law made retroactive by the Supreme Court on collateral review.”).
Williams also points to federal district courts that have declared that Miller is retroactive as a new substantive rule. See Pete v. United States, (No. CV-13-8149PCT-RCB (DKD), Jan. 9, 2014) (D.Ariz.2014) (not reported in F.Supp.2d) (order granting motion for resentencing under 28 U.S.C. § 2255) (“The United States agrees that Miller applies retroactively....”); Alejandro v. United States, (No. 13 Civ 4364(CM), Aug. 22, 2013) (S.D.N.Y.2013) (not reported in F.Supp.2d) (order granting motion for resentencing under 28 U.S.C. § 2255) (“Because Miller announced a new rule of constitutional law that is substantive rather than procedural, *209 that new rule must be applied retroactively on collateral review.”).[4]
Other courts, however, have decided differently. The state supreme courts in Minnesota, Pennsylvania, and Louisiana— along with the Court of Appeals for the Eleventh Circuit, and a panel from the Court of Appeals from the Fifth Circuit— have concluded that the rule announced in Miller is not a substantive rule, but is instead a procedural one.[5]
In Chambers v. State — released in May 2013 — the Minnesota Supreme Court held:
“We conclude that the rule announced in Miller v. Alabama is procedural, not substantive.... [T]he rule announced in Miller does not eliminate the power of the State to impose the punishment of life imprisonment without the possibility of release upon a juvenile offender who has committed a homicide offense. Instead, Miller invalidated a sentencing scheme that mandated the punishment of life without the possibility of release without consideration of the unique characteristics of a juvenile offender. In particular, Miller requires ‘that a sentencer follow a certain process — considering an offender’s youth and attendant characteristics — before imposing1 a sentence of life imprisonment without the possibility of parole. — U.S. at -, 132 S.Ct. at 2471 (emphasis added).”
831 N.W.2d at 328 (footnotes omitted). Likewise, the Supreme Court of Pennsylvania in October 2013 held:
‘We also agree with the Commonwealth that the first Teague exception does not apply to the Miller rule. Since, by its own terms, the Miller holding ‘does not categorically bar a penalty *210 for a class of offenders,’ Miller, — U.S. at-, 132 S.Ct. at 2471, (and because it does not place any. conduct beyond the State’s power to punish at all ...), it is procedural and not substantive for purposes of Teague.”
Cunningham, 81 A.3d at 6. Similarly, consistent with Minnesota and Pennsylvania, the Louisiana Supreme Court in November 2013 held:
.“[W]e find the Miller holding is properly classified as procedural. Miller held juveniles could not mandatorily be sentenced to life imprisonment without parole in homicide cases, invalidating a sentencing scheme mandating such harsh punishment without consideration of the unique characteristics of a juvenile offender. It did not alter the range ■of conduct, or persons subject to life imprisonment without parole for homicide offenses, nor did it eliminate a State’s power to impose such a sentence on a juvenile offender. While the Court opined ‘appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon,’ it specifically did not ‘foreclose a sentencer’s ability to make that judgment in homicide ■ cases.... ’ Miller, 132 S.Ct. at 2469.”
Tate, 130 So.3d at 836-37 (citations omitted).
As noted, the Courts of Appeals for the Fifth and Eleventh Circuits have'also determined that the rule announced in Miller is not substantive. Prior to the panel decision in In re Simpson, supra, a panel of the Fifth Circuit (Higginbotham, Owen, and Southwick, JJ.) in Craig v. Cain, (No. 12-30035, Jan. 4, 2013) (5th Cir.2013) (not reported in F.3d), denied a “request for a certificate of appealability ... to appeal from the district court’s denial of his 28 U.S.C. § 2254 application,” and, in so doing, squarely addressed Miller’s nonre-troactivity, stating:
.“The Miller ‘decision does not categorically bar .a penalty for a class of offenders or type of crime....’ Miller, 132 S.Ct. at 2471. Miller does not satisfy the test for retroactivity because it does not categorically bar all sentences of life impi-isonment for juveniles; Miller bars only those sentences made mandatory by a sentencing scheme. Id. at 2469. Therefore, the first Teague exception does not apply.”
Likewise, in an opinion authored by Judge Pryor, the Court of Appeals for the Eleventh Circuit in In re Morgan, 713 F.3d 1365 (11th Cir.2013)—also addressing “an application seeking an order authorizing the district court to consider a second or .successive motion to vacate,, set aside, or correct his federal sentence” — held:
“Morgan argues that we should conclude that Miller has been made retroactively applicable to decisions on collat.eral review because Miller created a new rule of constitutional law that prohibits a certain category of punishment for a class of defendants because of their status or offense, but we disagree. We have held that a prisoner may receive permission to file a second or successive motion to vacate, set aside, or correct a ’ sentence when a decision of the Supreme Court creates a new. rule of constitutional law that ‘prohibits] a certain category of punishment, for a class of defendants,’ [In re] Moss, 703 F.3d [1301] at 1303 [ (11th Cir.2013) ] (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989) abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)), because multiple decisions of the Supreme Court ‘necessarily dictate retroactivity of the new rule,’ Moss, 703 F.3d at 1303 *211 (quoting Tyler [v. Cain], 533 U.S. [656] at 666, 121 S.Ct. [2478] at 2484 [ (2001) ]), but Miller did not prohibit the imposition of a sentence of life imprisonment without the possibility of parole on minors. Instead, Miller held ‘that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.’ 132 S.Ct. at 2469. Miller changed the procedure by which a sentencer may impose a sentence of life without parole on a minor by ‘requiring] [the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.’ Id. And the Court declined to consider, ‘a categorical bar-on. life without parole for juveniles, or at least those 14 and younger.’ Id.
“Morgan argues that Miller is necessarily retroactive because any rule that expands the range of possible sentencing outcomes for a category of defendants by requiring that the sentencer have the option of imposinga lesser sentence is substantive, but we disagree. The Supreme Court has held that a new ‘rule[ ] prohibiting a certain category of punishment for a class of defendants because of their status or offense,’ Penry, 492 U.S. at. 330, 109 S.Ct. at 2953, is retroactive, but .that rule applies only where a class cannot be subjected to a punishment ‘regardless of the procedures followed,’ id. ‘In contrast, rules that regulate only the manner of determining the defendant’s culpability are procedural.’ Schriro v. Summerlin, 542 U.S. 348, 353, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442 (2004). In Penry, the Court held that a rule that required that a senteneer be able ‘to give effect to [ ] mitigating evidence in determining whether a defendant should be sentenced to death,’ Penry, 492 U.S. at 315, 109 S.Ct. at 2945, is retroactive, but the Court reached, this conclusion because the rule was a procedural rule that was dictated by precedent, see id. at 319, 109 S.Ct. at 2947. A new rule is substantive when that rule places an entire class beyond the power of the government to impose a certain punishment regardless of the procedure followed, not when the rule expands the range of possible sentences.”
713 F.3d 1365.[6]
We are'persuaded by the reasoning of those. decisions holding that the rule announced in Miller is not retroactive as a substantive rule.
First, we are not persuaded that the rule announced in Miller is retroactive simply because the cases underlying the Miller decision — Kennedy, Roper, and Thompson — announced rules that were determined to be retroactive. A majority of the decisions underlying Miller involved the imposition of the death penalty; “members of the [United States Supreme] Court acknowledge what cannot fairly be denied .... death is a punishment different from, all other sanctions in Icind rather than degree.” Woodson v. North Carolina, 428 U.S. 280, 303, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Moreover, those decisions, unlike Miller, categorically proscribed a certain punishment — e.g., death for juveniles or mentally retarded defendants; Miller, by its own language, does not categorically prohibit the imposition of a senténce life imprisonment without the possibility of parole. Miller, - U.S. at —, 132 S.Ct. at 2471.
*212 Next, we note that the decisions from the Courts of Appeals for the First, Second, Third, Fourth, Fifth, and Eighth Circuits — holding that there was a prima facie showing that Miller was retroactive — are all “tentative” decisions or do not squarely address the question of retroactivity. See In re Pendleton, 732 F.3d at 283 (noting that the decision to allow the petitioners to file successive petitions was “tentative”); Johnson v. United States, 720. F.3d 720, 720-21 (8th Cir.2013) (noting that the decision to allow the petitioner to file a successive petition was “tentative”); Evans-Garcia, 744 F.3d at 238 (“Whether the new rule announced in Miller has been made retroactive by the Supreme Court presents a much closer question. We need not answer that question, however, because the government has also conceded that Miller has been made retroactive, at least under the prima facie standard.” (footnotes omitted)); In re Simpson, supra (“We do not resolve the ultimate issue of the retro-activity of Miller.”).
Likewise, we note that in many of the federal cases, the United States has conceded that the rule announced in Miller is retroactive; here, however, the State does not so concede, and, in fact, has asserted the general rule of nonretroactivity.[7] See Johnson, 720 F.3d at 721 (“The government has conceded that Miller is retroactive.”); Pete, supra (“The United States agrees that Miller applies retroactively[.]”); Evans-Garda, supra (same); Alejandro, supra (“In a letter to the court dated July 31, 2013, the Government conceded that Alejandro’s motion should be granted, and that he should be resentenced to determine whether a life sentence or some other sentence is appropriate in light of the Supreme Court’s decision in Miller.”).
According to Williams, In re Morgan is unpersuasive because, he argues, it was “reached over the strong dissents of three judges [and is] an outlier among the circuits.” (Williams’s brief, p, 17.) We disagree.
As an initial matter we note that Johnson — a case on which Williams relies in support of his position — was also reached over a strong dissent. We also note that the dissents to which Williams refers— although writing to the substance of the question of Miller’s retroactivity — actually refer to the votes in response to the “suggestion of rehearing en banc.” In re Morgan, 717 F.3d 1186, 1187 (“The court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it ... the suggestion of rehearing en banc is denied.”).
Additionally, even though the United States Courts of Appeals for the First, Second, Third, and Eighth Circuits — as well as a panel of the Fifth Circuit in In re Simpson — granted petitioners’ requests to file successive petitions, the issue of retro-activity was not squarely addressed in those cases. The Fifth and Eleventh Circuits — in In re Morgan and Craig—however, are thus far the only two circuits that *213 have squarely addressed the retroactivity of Miller, and both have agreed that Miller is not retroactive. Accordingly, we do not find In re Morgan to be unpersuasive or an outlier decision.
Next, decisions holding that Miller announced a substantive rule — such as those from Iowa, Illinois, Massachusetts, Mississippi, and Nebraska — are grounded in the conclusions that “mandatory life imprisonment without the possibility of parole” is a sentence and that the mandatory life-imprisonment-without-the-possibility-of-pa-role sentence is now proscribed by Miller; we do not share these conclusions.
Miller held that “mandatory life-without-parole sentences for juveniles violate the Eighth Amendment.” Miller, — U.S. at-, 132 S.Ct. at 2464 (emphasis added). Miller did not, however, categorically prohibit the imposition of a sentence of life imprisonment without the possibility of parole; instead, the decision prohibited the imposition of a life-imprisonment-without-parole sentence “without considering an offender’s youth and attendant characteristics .... ” Miller, — U.S. at -, 132 S.Ct. at 2471. “Mandatory” is defined as “[off, relating to, or constituting a command; required; preemptory.” Black’s Law Dictionary 980 (8th ed.2004). Similarly, “mandatory sentence,” as defined by Black’s Law Dictionary, is “[a] sentence set by law with no discretion for the judge to individualize punishment.” Black’s 1394. Thus, “mandatory” speaks to discretion and the manner in which the sentence is imposed, not to the actual sentence itself. “The definition of a procedural rule for purposes of the first Teague exception extends to rules that regulate the manner of determining a defendant’s sentence.” Chambers, 831 N.W.2d at 327 (citing Lambrix v. Singletary, 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). See also Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (“[Iff we held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed, such a -rule would fall under the first exception to the general rule of non-retroactivity and would be applicable to defendants on collateral review.”).
In holding that Miller announced a new substantive rule retroactive to cases on collateral review, the Nebraska Supreme Court in Mantich concluded that “[i]n essence, Miller ‘amounts to something close to a de facto substantive holding,’ because it sets forth the general rule that life imprisonment without parole should not be imposed upon a juvenile except in the rarest of cases” in which a “juvenile cannot be distinguished from an adult based on diminished capacity or culpability.” Mantich, 287 Neb. at 340, 842 N.W.2d at 730. As the court in Mantich acknowledges, however, the holding in Miller is not a de facto or bright-line rule — i.e., life imprisonment without parole is not proscribed— and the imposition upon a juvenile of a sentence of life imprisonment without the possibility of parole is dependent on a specific process. Unlike Nebraska, we are unwilling to read into Miller a bright-line or de facto rule where none exists.
Williams also argues, relying on the Mississippi Supreme Court’s decision in Jones, that Miller imposed a “substantive change” to Alabama’s sentencing statutes that “must be applied retroactivity.” (Williams’s brief, p. 19.) The Alabama Supreme Court in Ex parte Henderson 144 So.3d 1262 (Ala.2013), however, recognized that “[i]t is not the actual sentence of life imprisonment without parole that was barred in Miller”; instead, Miller “requires that the sentence be reviewed for the possibility of parole.” Ex parte Henderson, 144 So.3d at 1281. As the *214 Court of Appeals for the Eleventh Circuit stated in In re Morgan — addressing a nearly identical argument — “[a] new rule is substantive when that rule places an entire class beyond the power of the government to impose a certain punishment regardless of the procedure followed, not when the rule expands the range of possible sentences.” 713 F.3d at 1368.
Our conclusion that Miller speaks to procedure and not substance is bolstered by the Miller decision itself. “Miller established for the first time a requirement of individualized sentencing outside the death penalty context.” Craig, supra. Specifically, the Miller holding “mandates only that a sentencer follow a certain process ... before imposing a particular penalty.” — U.S. at -, 132 S.Ct at 2471. This statement establishes two things: first, that Miller speaks to the process associated with sentencing a juvenile and, second, that the process is separate and distinct from the sentence itself. See Henderson, 144 So.3d at 1284 (“The Miller Court was careful to clarify that its holding was not a categorical prohibition of a sentence of life imprisonment without parole for juveniles, but rather required the sentencer to consider the juvenile’s age and age-related characteristics before imposing such a sentence.”),.
Accordingly, we conclude that the rule announced in Miller is not a substantive rule but is instead a procedural rule. We now must decide whether, as a procedural rule, it is excepted from general rule of nonretroactivity.

ii. Procedural-Rule Exception

“In order to qualify as watershed, a new [procedural] rule must meet two requirements. First, the rule must be necessary to prevent ‘an “ ‘impermis-sibly large risk’ ” ’ of an inaccurate conviction. [Schriro v.] Summerlin, [542 U.S. 348] at 356 [ (2004) ]; see also Tyler [v. Cain], 533 U.S. [656], at 665 [(2001)]. Second, the rule must ‘alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.’ Ibid, (internal quotation marks omitted; emphasis deleted).”
Whorton, 549 U.S. at 418.
“We have repeatedly emphasized the limited scope of the second Teague exception, explaining that “‘it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty.”’ O’Dell [v. Netherlands 521 U.S. 151] at 157 [(1997)] (quoting Graham [v. Collins, 506 U.S. 461] at 478 [ (1993) ]). And, because any qualifying rule ‘ “would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge,” ’ Graham, supra, at 478 (quoting Teague, supra, at 313), it should come as no surprise that we have yet to find a new rule that falls under the second Teague exception....
“In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of Gideon v. Wainwright, 372 U.S. 335 (1963) (right to counsel), and only to this rule. See, e.g., Saffle [v. Parks, 494 U.S. 484] at 495 [ (1990) ]. Gideon overruled Betts v. Brady, 316 U.S. 455 [(1942), noting that Betts itself had ‘made an abrupt break with [the Court’s] well-considered precedents.’ 372 U.S., at 344. The Court [in Sajfle ] continued:
“ ‘Lawyers to prosecute are everywhere deemed essential to protect the public’s interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who *215 fail to hire the best lawyers they can get to prepare and; present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal' cannot> be realized if the poor man charged with crime has to face his accusers without a lawyer to assist hint.’
“Ibid, (emphasis added). See also id., at 344-345 (quoting Powell v. Alabama, 287 U.S. 45, 68-69 (1932)). Gideon; it is fair to say, ‘alter[ed] our understanding of the bedrock procedural elements essential to the fairness of a proceeding.’ Sawyer v. Smith, 497 U.S. 227, 242 (1990) (internal quotation marks omitted).”
Beard v. Banks, 542 U.S. 406, 417, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004).
In support of his -argument, Williams points to People v. Williams, 367 Ill.Dec. 503, 519, 982 N.E.2d 181, 197 (Ill.App.Ct.2012), the only decision-in which a court has held “that Miller is ... a watershed rule of criminal procedure” (quotations omitted).- We are.--not persuaded; as a threshold matter, we note that the Illinois Supreme . Court in Davis discussed Williams but 'did not adopt its reasoning. Davis, 6 N.E.3d at 721.
First, the Williams decision does not cite — let alone discuss — Gideon v. Wainwright, which is the- only case to come within the second Teague exception and the case against which all other watershed-procedural-rule arguments are compared. See Whorton, 549 U.S. at 419 (“Guidance in answering this question is provided by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), to which we have repeatedly-referred in discussing the meaning of the Teague exception at issue here.”). Accordingly, we do not find Williams to be persuasive.
Moreover, the United States Supremé Court in Whorton noted that “in the years since Teague, it ha[s] rejected every claim that a new rule satisfíéd the requirements for watershed status.” 549 U.S. at 418. We conclude' that the rule announced in Miller — although a procedural rule — does not compare with the rule’ announced in Gideon; in so deciding we are mindful of the very narrow scope of the second Teag-ue exception to nonretroactivity, as well as the previously announced rules that the United States Supreme Court has concluded do not fall within this exception.[8]
Having concluded that the rule announced in Miller is not retroactive under the Teague framework,, we address *216 Williams’s argument that Miller is retroactive based on Jackson, a case decided in the same opinion as Miller.
c. Retroactivity Arising out of Jackson v. Hobbs
Williams next argues that “[ijn Miller itself, the Court applied the new rule retroactively.” (Williams’s brief, p. 23.) Specifically, Williams argues that “[t]he companion case [decided in the same opinion as Miller,] Jackson v. Hobbs ... was a case on state collateral review” and that, “[b]y reversing the judgment of the Arkansas Supreme Court and granting relief in Jackson, the Court applied Miller’s, new rule to a case on collateral review.” (Williams’s brief, pp. 23-24.) According to Williams, “[i]f the Supreme Court did not intend for Miller and Jackson to apply retroactively, it would have announced its ban on mandatory life-without-parole sentences for children only in Miller, a case on direct appeal, and would have withheld relief in Jackson.” (Williams’s brief, p. 25.) In support of this argument, Williams invokes the admonishment that “once a new rule is applied to the defendant in the case announcing the rule, even-handed justice requires that it be applied retroactively to all who are similarly situated.” (Williams’s brief, p. 24 (citing Teague, 489 U.S. at 300)). This argument fails for a number of reasons.
Regarding this type of argument, the United States Supreme Court in Tyler v. Cain, 533 U.S. 656, 666, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001), noted that it could “make a rule retroactive over the course of two cases” but that “[mjultiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule.” In her concurrence in Tyler, Justice O’Connor elaborated on this type of retroactivity:
“It is only through the holdings of this Court, as opposed to this Court’s dicta and as opposed to the decisions of any other court, that a new rule is ‘made retroactive ... by the Supreme Court’ within the meaning of § 2244(b)(2)(A). See ante, at 663; cf. Williams v. Taylor, 529 U.S. 362, 412 (2000). The clearest instance, of course, in which we can be said to have ‘made’ a new rule retroactive is where we expressly have held the new rule to be retroactive in a case on collateral review and applied the rule to that case. But, as the Court recognizes, a single case that expressly holds a rule to be retroactive is not a sine qua non for the satisfaction of this statutory provision. Ante, at 666. This Court instead may ‘ma[k]e’ a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule. Ibid. To apply the syllogistic relationship described by Justice Breyer, post, at 672-673 (dissenting opinion), if we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review. In such circumstances, we can be said to have ‘made’ the given rule retroactive to cases on collateral review.
“The relationship between the conclusion that a new rule is retroactive and the holdings that ‘ma[k]e’ this rule retroactive, however, must be strictly logical — i.e., the holdings must dictate the conclusion and not merely provide principles from which one may conclude that the rule applies retroactively. As the Court observes, ‘[t]he Supreme Court does not “ma[k]e” a rule retroactive when it merely establishes principles of retroactivity and leaves the appli *217 cation of those principles to lower courts.’ Ante, at 663. The Court instead can be said to have 1made’ a rule retroactive within the meaning of § 2844(b)(2)(A) only where the Court’s holdings logically permit no other conclusion than that the rule is retroactive,’’
Tyler, 533 U.S. at 668-69 (O’Connor, J., concurring) (emphasis added).
First, it is inaccurate for Williams to argue that “[i]f the Supreme Court did not intend for Miller and Jackson to apply retroactively, it would have announced its ban on mandatory life-without-parole sentences for children only in Miller, a case on direct appeal, and would have withheld relief in Jackson.” In Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), Padilla filed a petition for postconviction relief in state court asserting that his trial counsel was constitutionally deficient; specifically, Padilla argued “that his counsel not only failed to advise him of this consequence prior to his entering the plea, but also told him that he ‘did not have to worry about immigration status since he had been in the country so long.’” 559 U.S. at 359. The United States Supreme Court granted certiorari review “to decide whether, as a matter of federal law, Padilla’s counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country” and “agree[d] with Padilla that constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation.” Id. The Padilla Court reversed the judgment of the Kentucky Supreme Court and remanded the matter “for further proceedings not inconsistent with th[e] opinion.” 559 U.S. at 375.
Although the decision in Padilla was announced in the context of a petitioner bringing a claim in state postconviction proceedings — and the matter was remanded for proceedings consistent with the opinion — the United States Supreme Court later held in Chaidez v. United States, — U.S.-, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013), that the rule announced in Padilla was not retroactive. Accordingly, it does not follow that, simply because Jackson was decided on state collateral review, the rule announced in Miller is retroactive. Accordingly, this argument is without merit.[9]
Second, we note that the Miller Court did not reverse Jackson’s sentence nor hold that the decision in Miller was applicable to Jackson.[10] Miller, — U.S. at *218 -, 132 S.Ct. at 2475 (“We accordingly reverse the judgments of the Arkansas Supreme Court and Alabama Court of Criminal Appeals and remand the cases for further proceedings not, inconsistent with this opinion.”). As the Pennsylvania Supreme Court stated in Cunningham:
“Initially, we reject Appellant’s position that the Miller Court’s reversal of the state appellate court decision affirming the denial of post-conviction relief in the Jackson case compels the conclusion that Miller is retroactive. In the first instance, it is not clear that the issue was even placed before the Court, and, as the Commonwealth observes, the Supreme Court need not entertain questions of retroactive application where the government has not raised it. See Goeke [v. Branch ], 514 U.S. [115] at 117, 115 S.Ct. [1275] at 1276 [(1995).]”
Cunningham, 81 A.3d at 9. See also People v. Carp, 298 Mich.App. 472, 520, 828 N.W.2d 685, 713 (2012) (“In Jackson, because the State did not raise the issue of retroactivity, the necessary predicate for the Court to resolve the question of retro-activity was waived. Hence, merely because Jackson was before the Court on collateral review is not dispositive on the issue of retroactivity.”). In light of the fact that the issue of retroactivity was not squarely before the Court in Miller, we cannot say that the combined effect of Miller and Jackson is to “logically permit no other conclusion than that the rule is retroactive.” Tyler, 533 U.S. at 669 (O’Connor, J., concurring). It is for' this same reason that wé are not treating Williams differently than the United States Supreme Court treated Jackson. More specifically, the issue of nonretroac-tivity has, in fact,, been raised in this case and is squarely before this Court, unlike in Jackson where the issue of nonretroactivity was not raised and was not addressed by the Court.
Accordingly, Williams’s retroactivity argument based on Jackson is without merit.[11]

C. Conclusión on Retroactivity of Miller

Because the rule announced in Miller is not retroactive and because Williams’s Miller claim is nonjurisdictional, Williams is not entitled to relief on his Miller claim; further, because “no material issue of fact or law exists which would entitle [Williams] to relief,” the circuit court correctly summarily dismissed Williams’s petition. Rule 32.7(d), Ala. R.Crim. P.

II. Circuit Court’s Dismissal Order

Finally, Williams .challenges “[t]he circuit court’s summary dismissal of [his] petition and. [the circuit court’s] verbatim adoption of the State’s proposed order,” arguing that “[t]he [circuit] court’s verbatim adoption of the State’s proposed order runs afoul of Rule 32.2 and the Alabama Supreme Court’s decision in. Ex parte Ingram, 51 So.3d 1119, 1124 (Ala.2010), and violates[ ] Williams’s right to due process under the Fifth and Fourteenth Amendments.” (Williams’s brief, p. 43.)
In Ex parte Ingram, the circuit court dismissed a Rule 32, Ala. R.Crim. P., petition for postconvietion relief using “a verbatim adoption of [a] proposed order filed by the State” with very little' modification. *219 51 So.3d 1119 (Ala.2010). The Alabama Supreme Court concluded that “the patently erroneous nature of the statements” made in the order “undermine[d] any confidence that the [circuit] court’s findings of fact and conclusions of law [in the order] [were] the product of the [circuit court’s] independent judgment.” Ex parte Ingram, 51 So.3d at 1125. The Alabama Supreme Court later examined Ex parte Ingram in Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d-(Ala.2011).
In Ex parte Scott, the Alabama Supreme Court “granted [certiorari review] to determine whether the trial court’s adoption of the State’s answer ... as its order denying Scott’s [Rule 32] petition conflict[ed]”.with Ex parte Ingram., Ex parte Scott, — So.3d at-. In Ex parte Scott, the Alabama Supréme Court — although not necessarily concerned with “an order proposed or ‘prepared’ by a party” — found “troubling” the fact that “because the trial court adopted verbatim the State’s answer as its order, the order [was] infected with the same adversarial zeal ... as ... the [State’s] answer.” Ex parte Scott, — So.3d at-. In the end, the i?* parte Scott Court held that “[t]he trial court’s verbatim adoption of the State’s answer to Scott’s Rule 32 petition as.its order, by its nature, violate[d] th[e] Court’s holding in Ex parte Ingram.” — So.3d at -.
We note two things regarding Ex parte Ingram and Ex parte Scott. First, both Ex parte Ingram and Ex parte Scott involved defendants who had been sentenced to death; Williams was not. Second, the Alabama Supreme Court did not hold that the verbatim adoption of a proposed order warrants automatic reversal; instead, in both cases, the Alabama Supreme Court focused on various aspects of the respective orders that “undermine[d] any confidence that the [circuit] court’s-findings of fact and conclusions of law [were] the product of the [circuit] judge’s independent judgment.” Ex parte Ingram, supra.
Although Williams takes umbrage with the fact that “the circuit court’s order is a verbatim adoption of opposing counsel’s proposed order, containing identical formatting and page numbering” and contends that the verbatim order “fails to evince any evidence of independent judgment by the [circuit] court,” Williams does not specifically identify anything that “undermines ... confidence that the [circuit] court’s findings of fact and conclusions of law [were] the product of the- [circuit] judge’s independent judgment.” Ex parte Ingram, supra. This Court addressed a similar argument in Davis v. State, [Ms. CR-10-0224, Aug. 30, 2013] — So.3d - (Ala.Crim.App.2013), and found it merit-less:
“Davis does not identify any specific portions of the circuit court’s order that he believes contains such ‘adversarial zeal,’ nor does he allege that any portions are clearly erroneous. Instead, he merely points to two typographical errors that appear in both the State’s proposed order and the circuit court’s order, In Scott, the Alabama Supreme Court stated: ‘We do not consider the few typographical errors at issue here, by themselves, as sufficient evidence upon which to base a conclusion that the trial court’s order is not a product of the trial court’s independent judgment.’ — So.3d at-. Accordingly, we hold that the circuit court did not commit reversible error by adopting the State’s proposed order as its own.”
Davis, — So.3d-. Moreover, after a review of the order, we conclude that the circuit court’s order in this case — although a verbatim adoption of the State’s- proposed order — does not implicate the same concerns as did the orders in Ex parte *220 Ingram and Ex parte Scott Therefore, this argument is without merit.

Conclusion

For the foregoing reasons, we hold that the rule announced in Miller v. Alabama is procedural in nature and does not fall within the narrow exception recognized.for newly announced procedural rules; thus, the rale announced in Miller is subject to the general rule of nonretroactivity. Accordingly, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. Because we conclude that the rule announced in Miller is not retroactive, we need not address whether Williams’s Miller claim was sufficiently pleaded so as to entitle him to a hearing.

. Although this Court is not constrained by the nonretroactivity analysis of Teague, see Danforth v. Minnesota, 552 U.S. 264, 280-81, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), “Alabama courts have used the Teague analysis to determine whether decisions should be applied retroactively.” Acra, 105 So.3d at 469 (Welch, J., concurring specially). Williams argues — for the first time on appeal — that this State should adopt an alternative means of determining the retroactivity of Miller; we believe, however, that such a decision — if it is to be considered — is best left to the Alabama Supreme Court, which has -also used the Teag-ue analysis. See Ex parte Harris, 947 So.2d 1139 (Ala.2005); Ex parte Giles, 632 So.2d 577, 589-90 (Ala.1993) (Almon, J., dissenting from the denial of the application for rehearing)-

. We note that no court, so far as we are aware, has held that Miller announced an old rule.

. Williams also relies on Hill v. Snyder, (No. 10-14568, Jan. 30, 2013) (E.D.Mich.2013) (not reported in F,Supp.2d) (opinion and order granting in part a motion for resentencing under 28 U.S.C. § 2255), In Hill, prisoners "filed a complaint challenging the constitutionality of [Michigan law], which prohibits the Michigan Parole Board from considering for parole those sentenced to life in prison for first-degree murder,” and sought "a declaration th[at] [the law] was unconstitutional as applied to those who were convicted when they were under the age of eighteen.” The Hill court decided that "[b]ecause Miller was decided while this case was pending, its rule applies to the parties before the Court.”
Hill is a declaratory-judgment action addressing the constitutionality of a statute, not a postconviction proceeding; thus, that court's determination of the retroactive application of Miller to plaintiffs in a civil action is inapposite to our decision whether Miller applies retroactively to prisoners in postconviction proceedings. Moreover, any finding in Hill that Miller retroactively applies to defendants on collateral review is dicta. See Hill at n. 2 ("Moreover, this court would find Miller retroactive on collateral review, because it is a new substantive rule, which 'generally apply retroactively.' " (emphasis added)).

. Intermediate courts of appeal in Florida and Michigan have also determined that the rule announced in Miller is not a retroactive substantive rule. See Geter v. State, 115 So.3d 375, 385 (Fla.Dist.Ct.App.2012) ("Accordingly, Miller does not warrant retroactive application to Florida juvenile homicide offenders whose convictions and sentences were final as of June 25, 2012, the date Miller was issued.”); People v. Carp, 298 Mich.App. 472, 538, 828 N.W.2d 685, 723 (2012) ("While Miller is applicable to those cases currently pending or on direct review, we find that in accordance with Teague and Michigan law that it (1) is not to be applied retroactively to cases on collateral review, such as Catp’s, because the decision is procedural and not substantive in nature, and (2) does not comprise a watershed ruling.”). Those decisions, however, are currently pending review by the supreme courts of Florida and Michigan, respectively, See Falcon v. State, 111 So.3d 973 (Fla.Dist.Ct.App.2013) (certifying the question of Miller's retroactivity to the state supreme court); People v. Carp, 838 N.W.2d 873 (Mich.2013) (order granting an appeal of the decision of the intermediate court).

. The Court of Appeals for the Eleventh Circuit subsequently declined to rehear In re Morgan en banc, In re Morgan, 717 F.3d 1186 (11th. Cir.2013) (denying en banc rehearing)/

. Judge Pryor expressed concern regarding the concessions by the government in cases involving the retroactive application of Miller. See In re Morgan, 717 F.3d at 1193 (Pryor, J., respecting the denial of rehearing en banc) ("The United States could not concede this legal issue, even if it had taken that position before this Court. And the attempt of the United States to concede this jurisdictional issue before our Court would be of particular concern because a holding that Miller is substantive would bind future panels in proceedings involving state prisoners_But we cannot accept the attempt by the United States to concede a jurisdictional issue that must be resolved to the contrary under binding precedent of the Supreme Court.” (citations omitted)).

. See Whorton, 549 U.S. at 419 (“The Crawford rule is in no way comparable to the Gideon rule.”); Beard v. Banks, 542 U.S. 406, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (concluding that the rule announced in Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), has "none of the primacy and centrality of the rule adopted in Gideon " (quotations omitted)); O’Dell, 521 U.S. at 167 (holding that the rule announced in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) was "[u]nlike the sweeping rule of Gideon ”).

. This same argument — that retroactivity somehow arises out of the decision in Jackson — formed the basis of the decision in In re Simpson. See In re Simpson, supra (“The [Miller ] Court considered both cases together, applied its reasoning and holding to both cases, and specifically held that the defendant in Jackson should be given an individualized sentencing hearing."). That Fifth Circuit panel in In re Simpson — like Williams in this case — does not address the reasoning announced by Justice O’Connor in Tyler, nor did the In re Simpson court recognize that the issue of nonretroactivity — which must be raised by the State and, if it is not, need not be addressed by a court — was not raised or addressed in Jackson. Finally, as discussed below, we question the conclusion by the court in In re Simpson that the Supreme Court “held that the defendant in Jackson should be given an individualized sentencing hearing.” For this reason, we do not find In re Simpson compelling.

. On remand from the United States Supreme Court, the Arkansas Supreme Court “agree[d] with the State’s concession that Jackson [wa]s entitled to the benefit of the United State's Supreme Court’s opinion in his own case,” Jackson v. Norris, 426 S.W.3d 906 (Ark.2013). That court did not, however, announce a broader rule of retroactivity in *218 light of the Supreme Court’s decision in Jackson.

. Williams also argues that "[f]he new rule created , . in Miller [is retroactive because it] was based on precedent that is -retroactive.” (Williams’s brief, p. 26.) As we addressed above, however, the precedent underlying Miller comprises cases in which a sentence of death was imposed or cases in which the United States Supreme Court announced a categorical ban on a specific sentence; neither situation is present here. Accordingly, this argument is without merit.