[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 47 
The appellant, Jimmy Williams, Jr., appeals from his conviction for murder made capital pursuant to § 13A-5-40(a)(2), Ala. Code 1975 ("[m]urder by the defendant during a robbery in the first degree or an attempt thereof"), and for conspiracy to commit first-degree robbery, a violation of § 13A-4-3, Ala. Code 1975. He was sentenced to life in prison without parole on the capital-murder count and to 20 years on the conspiracy-to-commit-robbery count. We affirm.
The following issues are presented for review:
 1. Whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution[1] or § 13A-4-5(b)(3), Ala. Code 1975,[2] barred the trial court from convicting and sentencing the appellant both for capital murder and for conspiracy to commit first-degree robbery;
 2. Whether the evidence was sufficient to sustain the appellant's conviction of capital murder;
 3. Whether the trial court erred in denying the appellant's motion to suppress his statements to the police; and
 4. Whether the appellant is entitled to a new trial on the grounds of prosecutorial misconduct.
With respect to the first issue, the appellant contends that, because the offense of capital murder required proof that the victim was killed during the commission of a first-degree robbery, he could not be convicted and sentenced both for capital murder and for conspiracy to commit first-degree robbery. The gravamen of the appellant's argument is that the first-degree robbery element of the capital-murder offense and the conspiracy-to-commit-first-degree-robbery offense were both based on and arose out of the same course of conduct; therefore, he says, the first-degree robbery element of the capital-murder offense and the conspiracy-to-commit-first-degree-robbery offense constituted the same offense for purposes of applying the Double Jeopardy Clause. Along this same vein, the appellant contends that he was "`convicted on the basis of the same course of conduct of both the actual commission of an offense [murder made capital pursuant to § 13A-5-40(a)(2)] and . . . [c]riminal conspiracy of the offense [conspiracy to commit first-degree robbery],'" in violation of § 13A-4-5(b)(3). (Appellant's brief at p. 8, quoting § 13A-4-5(b).) We disagree with both contentions.
The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger v. United States, 284 U.S. 299
(1932). Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not. The test emphasizes the elements of the two offenses. If each offense requires *Page 48 
proof of a fact that the other does not, then the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the offenses. In essence, the Blockburger rule is one of statutory construction. The assumption underlying the rule is that the legislative branch of government ordinarily does not intend to punish for the same offense under two different statutes. Therefore, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments, at least in the absence of a clear indication of contrary legislative intent. See Ex parte Rice, 766 So.2d 143
(Ala. 1999).
Under § 13A-4-3, "[a] person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement." On the other hand, the offense of murder made capital pursuant to § 13A-5-40(a)(2), requires no agreement to effect that offense. See §§ 13A-6-2(a)(1); 13A-8-41; and13A-8-43, Ala. Code 1975. Likewise, the offense of murder made capital pursuant to § 13A-5-40(a)(2) requires proof of an intentional killing; § 13A-4-3 requires no such proof. Clearly, the two offenses for which the appellant was convicted and sentenced are not the same under the Blockburger test. Therefore, we find no merit in the appellant's argument that his rights under the Double Jeopardy Clause were violated.
Neither are we persuaded that the appellant's convictions ran afoul of § 13A-4-5. That provision specifically prohibits a person from being convicted on the basis of the same course of conduct of both the actual commission of an offense and criminal conspiracy to commit that same offense. See Perkins v. State, 715 So.2d 888 (Ala.Crim.App. 1997). Section 13A-4-5(b)(3) merges the inchoate offense into the conviction for the substantive offense to the extent that it bans a double conviction for both the substantive offense and a conspiracy to commit that offense. See the Commentary to § 13A-4-5.
Based on the evidence presented, the appellant is correct that the jury had to have found him guilty of committing a first-degree robbery in order to have returned a guilty verdict on the capital-murder count. However, the jury also necessarily had to have found that the appellant intentionally killed the victim. Based on the finding of that additional element, the jury found the appellant guilty of the offense of capital murder and the trial court entered a judgment of conviction based on that verdict. The appellant was convicted of murder made capital pursuant to § 13A-5-40(a)(2) and of conspiracy to commit first-degree robbery. He was not convicted of capital murder and conspiracy to commit capital murder. This distinguishes this case from Perkins v. State, supra, where this court set aside the appellant's conviction for conspiracy to commit first-degree theft of property because he had also been convicted of the substantive offense of first-degree theft of property. Therefore, based on the plain language of the statute, § 13A-4-5(b)(3) has no field of operation here. See Ex parte Looney, 797 So.2d 427 (Ala. 2001) (noting the well-established rule that words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says).
With respect to the second issue, the appellant argues that the evidence was insufficient to create an inference that he intentionally killed the victim. However, *Page 49 
viewing the evidence in the light most favorable to the State, and recognizing that the culpable mental state of an accused at the time of the alleged offense is a matter that must necessarily be inferred from the surrounding facts and circumstances, we conclude that the evidence was sufficient to sustain a finding beyond a reasonable doubt that the appellant intentionally killed the victim. See Hutcherson_v. State,727 So.2d 846 (Ala.Crim.App. 1997), aff'd, 727 So.2d 861 (Ala. 1998), cert. denied, 527 U.S. 1024 (1999) (intent to cause death may be inferred from the character of the assault, the use of a deadly weapon, and all other circumstances surrounding the death of the deceased). It was for a jury to determine whether the appellant intentionally shot the elderly victim in the head for the purpose of robbing him.
As to the third issue, the appellant urges this court to interpret the Fourth Amendment to the United States Constitution as extending the same protections recognized by the United States Supreme Court in Payton v. NewYork, 445 U.S. 573 (1980), to participants in the "boot camp" program at the Montgomery County Youth Facility. He argues that the statements he made to Montgomery Police Detective Guy Naquin during and subsequent to his transfer from that facility[3] to the Montgomery Police Department for questioning in relation to his involvement in the death of the victim in this case should have been suppressed because, he says, he made his statements after he had been illegally arrested at the facility without an arrest warrant.[4] We find this argument unpersuasive for several reasons.
Rule 4.1, Ala.R.Crim.P., and § 15-10-3(a)(3), Ala. Code 1975, provide that a police officer may arrest a person without a warrant when the officer has probable cause to believe that the person arrested committed a felony. "Reasonable cause," as set out in § 15-10-3(a)(3), is equated with "probable cause." See Smith v. State, 727 So.2d 147 (Ala.Crim.App. 1998), aff'd, 727 So.2d 173 (Ala. 1999), cert. denied, 528 U.S. 833
(1999). The appellant does not argue that Detective Naquin lacked probable cause to arrest him. He argues only that his warrantless, routine arrest violated Payton.
Initially, we note that in Payton the United States Supreme Court discussed the enhanced Fourth Amendment protection a person enjoys while in his home. In Payton, the Court held that the Fourth Amendment prohibits the police from making a warrantless, nonconsensual entry into a suspect's home in order to make a routine felony arrest. The consent necessary in the Payton context is consent to enter, not consent to arrest. See Freeman v. State, 776 So.2d 160, 178 (Ala.Crim.App. 1999), aff'd, 776 So.2d 203 (Ala. 2000), cert. denied, 121 S.Ct. 400 (2000). However, we cannot agree with the appellant's assertion that the "home" discussed in Payton is akin to the juvenile facility in which the appellant was placed pursuant to a previous *Page 50 
adjudication of delinquency.[5] Contrary to the appellant's contention, involuntary participation in a "boot camp" program at a juvenile youth facility is more closely related to a prison setting than the home setting contemplated in Payton, in the sense that a juvenile's freedom and activities are severely restricted and the juvenile has a greatly reduced expectation of privacy from governmental intrusion. It was the reasonable expectation of privacy and the right to be free from unreasonable governmental intrusion that a person has within his or her home that formed the basis for the holding in Payton. See Waldrop v.State, 462 So.2d 1021 (Ala.Crim.App. 1984), cert. denied, 472 U.S. 1019
(1985); Reynolds v. State, 396 So.2d 1076 (Ala.Crim.App. 1981). "A prison `shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room.'" See Hudson v. Palmer, 468 U.S. 517, 527
(1984), quoting Lanza v. New York, 370 U.S. 139, 143-44 (1962). See alsoBell v. Wolfish, 441 U.S. 520 (1979); State v. Mason, 31 Wn. App. 41,49, 639 P.2d 800, 805 (1982) ("[d]efendant's involuntary detention at [a juvenile detention facility] did not make it his home as contemplated byPayton").
Furthermore, the appellant's statements would have been admissible even if this court were to accept his argument that he was arrested without a warrant in a youth facility with the kind of "home-like" environment contemplated in Payton. A consensual entry into a suspect's home is outside the scope of Payton. See Fortenberry v. State, 545 So.2d 129
(Ala.Crim.App. 1988), aff'd, 545 So.2d 145 (Ala. 1989), cert. denied,495 U.S. 911 (1990) (noting that the consent of one who possesses common authority over the premises is valid as against the absent, nonconsenting person with whom the authority is shared); see also the cases cited in La Fave, Search and Seizure, A Treatise on the Fourth Amendment, § 6.1(c) (2d ed. 1987) ("the lower courts have rather consistently held that no warrant is needed when the person to be arrested or some other person with a sufficient interest in the premises to admit visitors voluntarily consented to entry by a known police officer"). For all that appears in the record before us, Detective Naquin was given permission to enter the youth facility for the purpose of taking the appellant into custody. In addition, the United States Supreme Court held in New Yorkv. Harris, 495 U.S. 14 (1990), that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation ofPayton." Harris, 495 U.S. at 21. See also Parker v. State, 587 So.2d 1072,1088 (Ala.Crim.App. 1991), aff'd, 610 So.2d 1181 (Ala. 1992), cert. denied, 509 U.S. 929 (1993).
We find no merit in the appellant's contention that the trial court erred in denying his motion to suppress his statements.
Finally, with respect to the fourth issue, the appellant argues that reversible error occurred when the prosecutor referred to the fact that the victim was a veteran and that he had been killed *Page 51 
defending his home on the Fourth of July. However, the record does not indicate that the appellant objected to such a comment; therefore, this claim is not properly before us. See Click v. State, 695 So.2d 209, 231
(Ala.Crim.App. 1997), cert. denied, 522 U.S. 1001 (1997). In any event, the record indicates that the prosecutor's comments were within the permissible scope of closing argument. Ferguson v. State, 814 So.2d 925
(Ala.Crim.App. 2000); Cross v. State, 536 So.2d 155 (Ala.Crim.App. 1988).
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
McMillan, P.J., and Cobb, Baschab, and Wise, JJ., concur.
[1] The appellant characterizes his first issue as one also implicating this state's constitutional protections against double jeopardy; however, he made no argument concerning Article I, § 9, of the Alabama Constitution. Therefore, we do not address that provision.
[2] See also § 13A-1-8(b)(2), a companion provision that is not directly at issue in this case.
[3] He had been placed in the "boot camp" as the result of a previous adjudication of delinquent conduct (burglary).
[4] We note that in J.W. v. State, 751 So.2d 529 (Ala.Crim.App. 1999), this court, reviewing the appellant's appeal of his transfer from the juvenile court to the circuit court for trial as an adult, stated that Detective Naquin had obtained an arrest warrant. That statement accurately reflects the record that was before this court on that appeal. The record on the present appeal indicates, however, that Detective Naquin never obtained an arrest warrant.
[5] In Payton, the Court noted: "In this case, however, neither history nor this Nation's experience requires us to disregard the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." 445 U.S. at 601.