STUART, Justice.
This Court issued the writ of certiorari to review the decision of the Court of Criminal Appeals that the rule announced by the United States Supreme Court in Miller v. Alabama, 567 U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), does not apply retroactively to cases that became final before its pronouncement. We affirm.

Facts and Procedural History

In August 2000, Jimmy Williams, Jr., was convicted of murder made capital because it was committed during a robbery, see § 13A-5-40(a)(2), Ala.Code 1975, an offense he committed when he was 15 years old. In accordance with the applicable law at the time of Williams’s sentencing, see § 13A-6-2(c), Ala.Code 1975, Thompson v. Oklahoma, 487 U.S. 815, 817, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), the trial court sentenced Williams to life imprisonment without the possibility of parole, the only possible sentence and one that was mandatory. The Court of Criminal Appeals affirmed Williams’s conviction and sentence. Williams v. State, 830 So.2d 45 (Ala.Crim.App.2001), writ quashed, 830 So.2d 45 (Ala.2002). The Court of Criminal Appeals issued its certificate of judgment in April 2002.
In June 2013, Williams petitioned the circuit court, see Rule 32, Ala. R.Crim. P., for a new sentencing hearing, asserting that under Miller, decided a year earlier, the mandatory sentence of life imprisonment without the possibility of parole to which he was sentenced in 2000 for an offense committed when he was 15 years old was unconstitutional and, consequently, that he was entitled to be resentenced based on the individualized sentencing factors discussed in Miller. Specifically, Williams alleged that, under Rule 32.1(a), a new sentence proceeding was required because, he said, his sentence of life imprisonment without parole was unconstitutional; that, under Rule 32.1(b), the trial court was without jurisdiction to impose the mandatory sentence of life imprisonment without the possibility of parole; and that, under Rule 32.1(c), his mandatory sentence of life imprisonment without parole was not authorized by law. The State moved to dismiss Williams’s petition, asserting, among other reasons, that Miller did not apply retroactively to cases on collateral review, i.e., that Miller did not apply to cases that became final before its pronouncement. The circuit court dismissed Williams’s petition, and Williams appealed to the Court of Criminal Appeals.
The Court of Criminal Appeals affirmed the circuit court’s judgment, holding that Miller set forth a new rule of criminal procedure that did not apply to cases that had become final before its pronouncement and that, therefore, Williams was not entitled to a new sentencing hearing. Williams v. State, 183 So.3d 198 (Ala.Crim.App.2014). Specifically, that court held that Miller did not apply retroactively and, consequently, that Williams’s sentence was not unconstitutional and he was not entitled to a new sentencing hearing under Rule 32.1(a). Additionally, the Court of Criminal Appeals held that the trial court had jurisdiction to impose Williams’s sentence and, therefore, that he was not entitled to relief under Rule 32.1(b) and that Williams’s sentence to life imprisonment without parole was not illegal and, therefore, that Rule 32.1(c) did not provide a meritorious' ground for relief.

Standard of Review

In criminal cases, this Court reviews pure questions of law de novo. Ex *222 parte Harrison, 61 So.3d 986, 989-90 (Ala.2010).

Discussion

In 2012, the United States Supreme Court addressed whether state statutes that mandate the imposition of a sentence , of life imprisonment without the possibility of parole for a juvenile defendant convicted of a capital offense[1] violated the Eighth Amendment, to the United States Constitution. Miller, 567, U.S. at —, 132 S.Ct. at 2460. Specifically, the Supreme Court held that a statute mandating a sentence of life imprisonment without the possibility of parole for a juvenile defendant violated the Eighth Amendment’s prohibition of cruel and unusual punishment. The Supreme Court further held that the sentencing of a juvenile defendant must be individualized and that the sentencer must consider the juvenile defendant’s age, the attendant circumstances of youth, and the nature of the offense before imposing a sentence. The Miller Court did not forbid the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile defendant; rather, the Court stated that such a sentence would be a rarity.
In reaching its decision the Miller Court considered two lines of precedent. First, it evaluated the line of cases holding that the Eighth Amendment’s prohibition of cruel and unusual punishment categorically bans= sentencing statutes that do not take into consideration the culpability of a class of offenders and the severity of the penalty imposed. See Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding unconstitutional a sentence of life imprisonment without parole for juvenile offenders who committed a non-homicide offense); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding unconstitutional a sentence of death for a defendant who is under the age of 18 at the time the underlying offense is committed); and Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (holding unconstitutional a sentence of death for an intellectually disabled defendant). These cases addressed a specific type of punishment for an identifiable class of defendants, adopting “categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty.” Miller, 567 U.S. at —-, 132 S.Ct. at 2463. From Graham and Roper, the Supreme Court observed that the sentencing of a juvenile is different from the sentencing of an adult because a juvenile, in light of his or her age, lacks maturity, is vulnerable to negative influences and outside pressures, and is continuing to develop his or her character. The Supreme Court concluded that for these reasons “juveniles have diminished culpability and greater prospects for reform” and thus are “ ‘less deserving' of the most severe punishments.’” 567 U.S. at -, 132 S.Ct. at 2464.
The Miller Court then considered the line of cases requiring a sentencer to conduct individualized sentencing when determining whether to impose a sentence of death. See Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion)(holding that a mandatory death sentence for a first-degree-murder conviction that precluded consideration of the character and the record of the defendant and circumstances surrounding the offense violated the Eighth Amendment); Lockett v. Ohio, 438 *223 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (holding that a statute mandating imposition of the death penalty for a capital-murder conviction violated the . Eighth Amendment because it prevented individualized consideration of mitigating circumstances); and Eddings v. Oklahoma, 455 U.S. 104, 105, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (holding that the Eighth Amendment required individualized consideration of relevant mitigating circumstances including defendant’s. character. and record before death sentence could be imposed). Recognizing that the Eighth Amendment required individualized sentencing for an adult defendant before the imposition of the most severe punishment of death and that the sentence of life imprisonment without the possibility of parole' for a juvenile defendant is the equivalent of a death sentence for an adult defendant, the Supreme Court held in Miller that the Eighth Amendment compelled individualized sentencing before a sentence of life imprisonment without the possibility of parole could be imposed on a juvenile defendant.
Merging the two lines of precedent— establishing, first, that juvenile defendants are less culpable and more susceptible to reform than are adult defendants and, second, that individualized sentencing was required before the harshest punishment of life imprisonment without the possibility of parole could be imposed on juvenile defendants — the Supreme Court held that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders.” Miller, 567 U.S. at-,-, 132 S.Ct. at 2464, 2469.
The Miller Court admonished:
“[Gjiven all we have said in Roper, Graham, and this decision about children’s diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great, difficulty we noted in Roper and Graham of distinguishing at this early age between ‘the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juVenile offender whose crime reflects ■irreparable corruption.’ ... Although we do not foreclose a sentencer’s ability to [impose a sentence of life imprisonment without parole] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to. a lifetime in prison;”
567 U.S. at - — , 132 S.Ct. at 2469.
In aecordancé with Miller, this Court in Ex parte Henderson, 144 So.3d 1262, 1284 (Ala.2013), held that. a trial .court must consider numerous factors before sentencing a juvenile defendant convicted of a capital, offense, stating:
.“We hold that a sentencing hearing for a juvenile convicted of a capital offense must now include consideration of: (1) the juvenile’s chronological age at the time of the offense -and the hallmark . features of youth, such as immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile’s diminished culpability; (3) the cir-eumstances of the offense; (4) the extent of the juvenile’s participation in the crime; (5). the juvenile’s family, home, and neighborhood environment; (6) the juvenile’s emotional maturity and devel- ■ opment; (7) whether familial' and/or "péer pressure affected the juvenile; (8) the juvenile’s past exposure to violence; (9) the juvenile’s drug and alcohol history; [1] (10) the juvenile’s ability to deal with the police; (11) the juvenile’s capacity to assist his or her attorney; (12) the juvenile’s mental-health history; (13) the *224 juvenile’s potential for rehabilitation; and (14) any other relevant factor related to the juvenile’s youth. See generally Commonwealth v. Knox [, 50 A.3d 732 (Pa.Super.Ct.2012) ].”
In his Rule 32 petition, Williams sought the benefit of the application of the rule announced in Miller and applied in Henderson. Because Williams’s conviction for capital murder and his sentence of life imprisonment without the possibility of parole became final 11 years before the United States Supreme Court decided Miller, he is entitled to be resentenced if Miller applies retroactively to cases that became final before its pronouncement. Thus, the dispositive question before this Court is whether Miller is subject to retroactive application in cases on collateral review.
In Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007), the Supreme Court provided that, when determining whether a rule should be applied retroactively, a court must first determine whether the rule is a new rule or an old rule. The Supreme Court held that “an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.” 549 U.S. at 416. The Supreme Court defined a new rule as “ ⅛ rule that ... was not “dictated by precedent existing at the time the defendant’s conviction became final.” ’ ” 549 U.S. at 416 (quoting Saffle v. Parks, 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), quoting in turn Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). For a new rule to apply to cases that are already final, “the Court’s holdings [must] logically permit no other conclusion than that the rule is retroactive.” Tyler v. Cain, 533 U.S. 656, 669, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (O’Connor, J., concurring).
In Ex parte Harris, 947 So.2d 1139, 1143-47 (Ala.2005), this Court recognized that, in determining whether a new rule of constitutional law applies retroactively, Alabama had adopted the analysis provided by the United States Supreme Court in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[2] Teague established that “a case announces a new rule when it breaks ground or imposes a new obligation on the States or Federal Government.” 489 U.S. at 301. Teague provided that “new rules should always be applied retroactively to cases on direct review, but ... generally they should not be applied retroactively to criminal cases on collateral review.” 489 U.S. at 303. The Teague Court reasoned that because collateral review is not a substitute for direct review and because the government has a legitimate interest in the finality of judgments, new rules of constitutional law should not be applied retroactively unless special circumstances exist. Teague set forth two exceptions to the general rule of nonretroactivity for new rules in criminal cases on collateral review: First, a new *225 rule should be applied retroactively when the new rule “places ‘certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,’” 489 U.S. at 311 (quoting Mackey v. United States, 401 U.S. 667, 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)(Harlan, J., concurring in the judgments in part and dissenting in part)); second, a new procedural rule should be applied retroactively on collateral review when the new rule “requires the observance of ‘those procedures that ... are “implicit in the concept of ordered liberty.” ’ ” 489 U.S. at 311 (quoting Mackey, 401 U.S. at 692.
The United States Supreme Court in Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), provided further explanation of the Teague retro-activity analysis, observing that the key distinction in the analysis is whether the new rule of constitutional law is substantive or procedural. The Summerlin Court explained that a substantive rule is one that limits a criminal statute by interpreting its terms or “placets] particular conduct or persons covered by the statute beyond the State’s power to punish.” 542 U.S. at 352. The Summerlin Court further explained with regard to' punishment that a new substantive rule included a rule prohibiting a certain category of punishment for a group of defendants because of their status or offense. 542 U.S. at 353. According to the Summerlin Court, such a rule is substantive and applies retroactively because the new rule carries a “ ‘significant risk that a defendant stands convicted of “an act that the law does not make criminal” ’ or faces a punishment that the law cannot impose upon him.” 542 U.S. at 352.
Alternatively, the Summerlin Court explained that new procedural rules do not apply retroactively because they “merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.” 542 U.S. at 352 (emphasis added). The Supreme Court reasoned that in light of “this more speculative connection to innocence,” a new procedural rule is watershed and applies retroactively only when the fundamental fairness and accuracy of the criminal proceeding are implicated. 542 U.S. at 352. In other words, to be watershed, a new procedural rule must meet two requirements: ■
“[I]nfringement of the rule ‘seriously diminishes] the likelihood of obtaining an accurate conviction,’ [Teague, v. Lane, 489 U.S. at 315] and ... the rule ‘ “alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding,”’ id. at 311 (plurality opinion)(quoting Mackey [v. United States, 401 U.S. 667,] 693 [ (1971) ] (Harlan, J., concurring in judgments in part and dissenting in part)).”
Tyler, 533 U.S. at 670 (O’Connor, J., concurring). With regard to the requirement that the new procedural rule “alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding,” Teague, 489 U.S. at 315, the Supreme Court explained that the requirement “cannot be met simply by showing that a new procedural rule is based on a ‘bedrpck’ right,” nor is it sufficient “[t]hat a new procedural rule is ‘fundamental’ in some abstract sense.” Wharton, 549 U.S. at 420-21. To meet this requirement the new procedural rule “must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding.” 549 U.S. at 421. As the United States Court of Appeals for the Fourth Circuit recognized: “[T]he wa *226 tershed-rule exception is ‘extremely narrow’ ” and “the Supreme Court has never found a new procedural rule to be ‘watershed’ despite the fact that it has considered the question fourteen times.” Johnson v. Ponton, 780 F.3d 219, 224 (4th Cir.2015)(citing Jennifer H. Berman, Comment Padilla- v. Kentucky: Overcoming Teague’s “Watershed,” Exception to Non-Retroactivity, 15 U. Pa. J. Const. L. 667, 685 (2012)).
In Summerlin, the Supreme Court considered whether the new rule of constitutional law pronounced in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requiring that a jury, not a judge, find the necessary aggravating circumstance for imposition of the death penalty, applied' retroactively to cases' on -collateral review. The Summerlin Court held that the new rule was procedural, stating that the rule only “altered the range of permissible methods for determining whether a defendant’s conduct is punishable by death.” 542 U.S. at 353. The Supreme Court then explained:
“This Court’s holding that, because [a state] has made a certain fact essential to the death penalty, that fact must be found by a jury, is not the same as this Court’s making a certain fact essential to the death penalty. The former was a procedural holding; the.latter would be substantive.” ' '
542 U.S. at 354.
With these principles in mind, we now consider whether the rule announced in Miller applies retroactively to criminal cases that are final.
First, we consider whether Miller announced a new rule or an old rule. Williams’s conviction became final in 2002; Miller was decided in 2012. Williams, the State, 'and the Court of Criminal Appeals agree that the Supreme Court created a new rule of constitutional law in Miller. We are in accord; at the time of Williams’s conviction, precedent' did not require the holding announced in Miller. Whorton, 549 U.S. at 416, Having acknowledged that the rule announced in Miller was a new rule, we proceed to determine,whether that rule applies retroactively to cases on collateral review.
Initially, we observe that a new rule of constitutional law pronounced by the United States Supreme Court is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive. Tyler, 533 U.S. at 663. The Supreme Court has not held that Miller is to be applied retroactively. In re Morgan, 713 F.3d 1365 (11th Cir.2013).
Williams argues that the Supreme Court’s decision to apply Miller to Kunt-rell Jackson, the petitioner bn collateral review in the companion case to Miller, Jackson v. Hobbs, indicates the Supreme Court’s intention that Miller be applied retroactively to cases on collateral review. We agree with'the Court of Appeals for the Fourth Circuit that “an express holding that a rule is retroactive, rather than mere application of the rule, is required to establish retroactivity, and the Court’s application of the rule to Jackson did not amount to an express holding.” Johnson, 780 F.3d at 224, The Fourth Circuit explained:
‘We observed in San-Miguel v. Dove[, 291 F.3d 257 (4th Cir.2002),] that the Supreme Court does not establish a rule’s retroactivity except through a holding to that effect. See 291 F.3d at 260. We derived this, principle from Tyler v. Cain, in which Justice O’Connor, concurring in the judgment, explained *227 that, where a petitioner relies on a ‘single ease’ to establish retroactivity, the Supreme Court in that case must have ‘expressly ... held the new rule to be retroactive on collateral review and applied the rule to that case.’ 533 U.S. at 668 (O’Connor, J., concurring)(emphasis added). Because an express holding as to retroactivity is required for a single Supreme Court case to establish retro-activity, the Court’s mere application of a new rule to a ease on collateral review is insufficient. And because Miller’s holding concerned only the life-without-parole sentencing process of juvenile homicide offenders, and not the retroac-tivity of the rule it announced, the Court’s application of that rule to Jackson did not render it retroactive.
“The Supreme Court has also demonstrated the principle that mere application of a new rule to a case on collateral review is itself insufficient to establish retroactivity. In Padilla v. Kentucky, 559 U.S. 356 (2010), the Court announced a new rule — that counsel is ineffective where she fails to ‘inform her client whether his plea carries a risk of deportation,’ id. at 374 — and applied it to the case at bar, which presented a challenge on collateral review, see id. at 359-60. Though without a companion case, Padilla is analogous to Miller and Jackson together in two ways.- First, Padilla announced a new rule .ánd applied that rule to a case on collateral review. And second, its holding did not mention or concern retroactivity. Three years later, the Supreme Court held that the Padilla rule' does not apply retroactively on collateral review. See Chaidez v. United States, — U.S. -, -, 133 S.Ct. 1103, 1113 (2013). Chaidez shows that the mere application of the Padilla rule in Padilla, without a holding as to retroactivity, was not enough to require application of that rule to other cases on collateral review. Similarly, in light of that example, we conclude that the Miller Court’s application of the rule in Jackson was not enough to establish the rule’s retroactivity.”
780 F.3d at 224-25.
The determination of whether Miller announced a substantive rule or a procedural rule is not easily answered. In Ex parte Maxwell, 424 S.W.3d 66, 72-74 (Tex.Crim.App.2014), the Texas Court of Criminal Appeals provided the following general discussion of the competing arguments on whether the rule announced in Miller was substantive or procedural:
“Those courts holding that Miller [ v. Alabama, 567 U.S.-, 132 S.Ct. 2455 (2012),] is not retroactive strictly ’construe that first Teague [v. Lane, 489 U.S. 288 (1989),] exception — a new substantive rule of law — to apply only when the new rule entirely removes a particular punishment from the list of punishments that may be constitutionally imposed on a class of defendants, not when a rule addresses the considerations for determining a particular sentence. These courts conclude that Miller does not satisfy the test for retroactivity because it does not categorically bar all sentences of life without parole for juveniles; Miller bars only those sentences made mandatory by an explicit sentencing scheme. It changed the permissible method — the procedure — by which the State could exercise its continuing power to punish juvenile homicide offenders by life without parole. Those- courts state that Miller, though informfed by the ‘categorical ban’ cases like Graham [v. Florida, 560 U.S. 48 (2010)], Roper [v. Simmons, 543 U.S. 551 (2005) ], and Atkins [v. Virginia, 536 U.S. 304 (2002)], is more like Ring [v. Arizona, 536 U.S. 584 (2002) ], Apprendi [v. New Jersey, 530 *228 U.S. 466 (2000)], or Padilla [v. Kentucky ], 659 U.S. 356 (2010) ], because it is procedural — simply requiring an additional sentencing procedure for juvenile offenders. These courts also downplay the importance of the Court’s remand of Miller’s companion case, Jackson v. Hobbs — which came to the Court through Arkansas’s state collateral-review process — as constituting a ruling or determination on retroactivity because the Court did not specifically hold that Miller is retroactive on collateral review.
“Conversely, those courts holding that Miller is retroactive have reasoned that it announced a substantive rule that prevents a ‘significant risk that a juvenile faces a punishment that the law cannot impose on him.’ They point to the Supreme Court’s explanation of a ‘new substantive rule’ in Schriro v. Summerlin[, 542 U.S. 348 (2004)]: New substantive rules include ‘constitutional determinations that place particular conduct or persons covered by the statute beyond the State’s power to punish.’ Miller places juveniles subject to mandatory ‘life without parole’ statutes beyond the State’s power to punish. It alters the range of outcomes of a criminal proceeding by prohibiting a mandatory sentence of life without parole for a juvenile murderer. Miller is categorical because it completely removes a particular punishment from the list of punishments that can be constitutionally imposed, that of mandatory life without parole.”
(Footnotes omitted.) See also In re Wilson, 233 Cal.App.4th 544, 562-65, 182 Cal.Rptr.3d 774, 787-90 (2015).
As previously discussed, new substantive rules are to be applied retroactively to cases on collateral review. Examples of new rules with regard to sentencing that the Supreme Court has held are substantive and therefore apply retroactively to cases on collateral review include rules that categorically ban certain punishments for an identifiable class of defendants. See Atkins (holding unconstitutional the imposition of a death sentence on intellectually disabled defendants); Roper (holding unconstitutional the imposition of a death sentence on juvenile defendants); and Graham (holding unconstitutional the imposition of a life-imprisonmenfc-without-parole sentence for a juvenile defendant convicted of a non-homicide offense). These cases, which categorically ban a specific type of punishment for an identifiable class of defendants, pronounced new substantive rules that apply to cases on collateral review.
The Court of Criminal Appeals in Williams’s case conducted a thorough Teague analysis to determine whether Miller announced a new substantive rule. Williams, 183 So.3d at 204-14. We agree with the Court of Criminal Appeals that the Supreme Court in Miller did not create a substantive rule. Miller does not place “‘certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,’ ” Teague, 489 U.S. at 311 (quoting Mackey, 401 U.S. at 692); Miller does not alter the range of conduct by a juvenile defendant that Alabama law may subject to a sentence of life imprisonment without the possibility of parole, Roper, 543 U.S. at 553; and Miller does not eliminate this State’s ability to impose a sentence of life imprisonment without the possibility of parole on a juvenile defendant. Miller, 567 U.S. at-, 132 S.Ct. at 2469. See also Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Because Miller does not categorically ban a sentence of life without parole, there is *229 not a significant risk that a juvenile defendant “faces a punishment that the law cannot impose upon him.” Summerlin, 542 U.S. at 352. Miller does not fall within the definition of a substantive rule as provided by the Supreme Court.
In determining that Miller did not pronounce a substantive rule, we have considered Williams’s argument that Miller created a substantive rule because it prohibits the imposition of a mandatory sentence of life imprisonment without parole, i.e., that Miller changed the law by providing a sentencing range broader than the range provided by statute and, consequently, Miller, by categorically banning a mandatory sentence and creating a new sentencing obligation, prevents “a significant risk that a [juvenile] ... faces a punishment that the law cannot impose on him.” Summerlin, 542 U.S. at 352. The only sentence available for a juvenile defendant convicted of a capital offense following Roper and before Miller was life imprisonment without the possibility of parole. The “mandatory” component of sentencing a juvenile defendant precluded the consideration of factors in determining the sentence. In Ex parte Henderson, this Court discussed the sentence of life imprisonment without the possibility of parole for a juvenile defendant:
“Although the death penalty has been categorically banned, a sentence of life imprisonment without the possibility of parole is still possible for a juvenile homicide offender. However, it cannot be automatically imposed as a sentence on a juvenile homicide offender based on the heightened protections established for sentencing juveniles as set out in the Supreme Court’s jurisprudence— It is the mandatory, determined at the outset, imposition of a sentence of life imprisonment without parole when sentencing juveniles that is outside constitutional boundaries. It is not the actual sentence of life imprisonment without parole that was barred in Miller. Instead, Miller requires that the sentence be reviewed for the possibility of parole. Miller’s Eighth Amendment boundaries when sentencing a juvenile homicide offender now subject that sentence to the possibility of parole.”
144 So.3d at 1281 (emphasis added). The fact that before Miller was decided a juvenile defendant’s sentence was mandatory, i.e., the sentencer had no discretion in the sentence to be imposed upon conviction, and that after Miller the sentencer now has discretion as- to what sentence to impose does not create a substantive change in the law. Miller did not make a certain fact essential to the imposition of the sentence. “[T]he Miller Court invalidated a mandatory sentencing scheme for juveniles, but it did not categoricálly ban a sentence of life imprisonment without parole.” 144 So.3d at 1280. Miller does not preclude the imposition- of a sentence of life imprisonment without the possibility of parole on a juvenile defendant; therefore, we cannot agree with Williams that the Miller Court’s requirement that the sentencing of juvenile defendants be individualized created a substantive change in the law.
We have also considered Williams’s argument that Miller’s expansion of the range of possible sentences for juvenile defendants, resulting in a change in Alabama’s sentencing scheme, substantively changed Alabama law. Admittedly, by expanding the range of punishments for juvenile defendants, Miller contains a substantive component; however, by definition a substantive rule is established when it prohibits the State from imposing a certain punishment on a class of defendants irrespective of the procedure used, *230 not when it merely expands the range of possible sentences. Therefore, the expansion of the sentencing range for a juvenile defendant does not satisfy the definition of a substantive rule.
In oral argument before this Court Williams urged that Atkins is analogous to Miller and that, because Atkins has been applied retroactively to cases on collateral review, Miller should likewise be applied retroactively. Williams points out that even though the rule announced in Atkins has a procedural component, the rule has been determined to be substantive.
• In Atkins, the Supreme Court held that the imposition of a death sentence on an intellectually disabled defendant violated the Eighth Amendment’s ban on cruel and unusual punishment and was therefore unconstitutional. The Supreme Court, however, left to the states the criteria for determining whether a defendant is intellectually disabled. The decision provided the states with discretion as to when Atkins applied and which defendants fell within Atkins. The Supreme Court, however, made clear that once a determination was made that a defendant was intellectually disabled, the state’s discretion ended and the state could not impose a sentence of death. Thus, although Atkins provided the states some discretion in determining the applicability of Atkins to a case, once a state determined that Atkins applied and a defendant was intellectually disabled, the state’s discretion ended. Atkins is a categorical rule in that, after a state has.determined that a defendant is intellectually disabled, the state cannot impose a sentence of death on that defendant.
Miller, on the other hand, is not a categorical rule; it requires the states to conduct individualized sentencing before imposing a sentence on a juvenile defendant, and it does not foreclose the imposition on a juvenile defendant of a sentence of life imprisonment without the possibility of parole. In Miller, the Supreme Court held that states must conduct a fact-finding procedure to determine a juvenile defendant’s culpability before imposing a sentence of life imprisonment without parole. States have no discretion in determining when and to which juvenile defendants Miller applies. Only after an individualized sentencing hearing has been conducted, in which the juvenile defendant can present mitigating evidence, may the state impose a sentence of life imprisonment without the possibility of parole. Miller provides states with discretion to determine the sentence. The Miller Court did not hold that the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile defendant is unconstitutional; rather, it held that such a sentence is permissible if found appropriate after an individualized sentencing hearing at which are considered the juvenile defendant’s age, the attendant characteristics of youth, and the nature of the offense.
Atkins is distinguishable from Miller. Unlike Atkins, which created a categorical ban of a certain punishment — death—for an identifiable group — the intellectually disabled — Miller created an individualized sentencing scheme, expanding the sentencing range for an identifiable group — juvenile defendants. Atkins compels a single result, i.e., if a defendant is intellectually disabled, the state cannot impose a sentence of death; Miller compels multiple results, i.e., the state must conduct a sentencing procedure for juvenile defendants that may- result in the imposition of a sentence within a range of sentences depending on the weight of the mitigating evidence presented by the juvenile defendant.
For the foregoing reasons, we conclude that Miller did not create a substantive rule requiring retroactive application to *231 cases on collateral review; rather, Miller set forth a procedural rule by proscribing the permissible methods by which states may exercise their continuing power to punish juvenile defendants by imposing a sentence of life imprisonment without the possibility of parole. Because Miller changed the method by which a sentencer may impose a sentence for a juvenile defendant by requiring consideration of the juvenile defendant’s age, other characteristics attendant to youth, and the nature of the offense, Miller created a rule of criminal procedure. See Johnson v. Ponton, 780 F.3d at 225-26 (holding that “[b]ecause only a ‘certain process — considering an offender’s youth and attendant characteristics — before imposing a particular penalty, [Miller, 567 U.S. at —132 S.Ct.] at 2471, is required after Miller, and because life without parole may still be imposed on juveniles so long as that process is carried out, Miller announced a procedural rule,' and cannot qualify for the Teague exception for substantive rules”). See also In re Morgan, 713 F.3d at 1368 (holding that Miller did not create a substantive rule “ ‘prohibiting a certain category of punishment for a class of defendants because of their status or offense’ instead, “Miller changed the procedure by which a sentencer may impose a sentence of life without parole on a minor”).
Our analysis of whether Miller applies retroactively, however, does not end with the determination that Miller is.not a substantive but a procedural rule; we now must determine whether Miller created a watershed rule of criminal procedure “ implicating the fundamental fairness and accuracy of the criminal proceeding/ ” which, • consequently, applies retroactively. Whorton, 549 U.S. at 417 (quoting Saffle v. Parks, 494 U.S. at 495).
The only rule of criminal procedure the Supreme Court has identified that may qualify as watershed is the rule pronounced in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)(holding that the State must appoint counsel for any indigent defendant charged with a felony): Whorton, 549 U.S. at 419. The Whorton Court explained that the rule set forth in Gideon may be a watershed rule becau'se the right to counsel is a bedrock procedural element of this country’s legal system, critical in eliminating the risk of an unreliable verdict. The Gideon Court explained why the new rule requiring counsel for an indigent defendant constituted a “previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding,” see Whorton, 549 U.S. at 421:
“The Sixth Amendment provides, ‘In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his de-fence.’ ...
[[Image here]]
“ ‘(The assistance of counsel) is one of the safeguards of the Sixth Amendment deemed necéssary to insure fundamental human rights of life and liberty. ... The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not “still be done.” Johnson v. Zerbst, 304 U.S. 458, 462 (1938). To the same effect, see Avery v. Alabama, 308 U.S. 444 (1940), and Smith v. O’Grady, 312 U.S. 329 (1941).’
“... [I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless *232 counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public’s interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant’s need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in Powell v. Alabama[, 287 U.S. 45 (1932)]:
“ ‘The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.’ 287 U.S., at 68-69.”
372 U.S. at 339-45 (footnotes omitted).
Miller’s holding that statutes mandating the punishment of life imprisonment without the possibility of parole for juvenile defendants are unconstitutional, albeit significant, is not watershed. Although Miller may change the sentencing procedure for a juvenile defendant with regard to the proportional relationship between the juvenile defendant’s culpability and the severity of the punishment imposed, Miller does not employ “a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding.” Whorton, 549 U.S. at 421. The, courts have long recognized the principles of individualized sentencing. See Woodson, Penny, and Lockett. Application of the principles of individualized sentencing in the sentencing procedures for juvenile defendants does not “ ‘alter[ ] our understanding of the bedrock procedural elements essential to the fairness of a proceeding.’” Whorton, 549 U.S. at 420 (quoting Sawyer v. Smith, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990)). Miller altered the range of permissible methods for determining a juvenile defendant’s sentence by requiring individualized sentencing and created the possibility that a juvenile de *233 fendant who previously could have been sentenced only to life imprisonment without the possibility of parole may now possibly receive a different sentence. This procedural change, although providing for additional considerations before the imposition of a sentence on a juvenile defendant convicted of a capital offense, created a “speculative connection” to a possible different sentence.
Similarly, the United States Supreme Court in Ring changed the procedure to be used in sentencing a convicted capital defendant, requiring a jury determination of any fact that would make a defendant “death eligible.” Ring is not applied retroactively on collateral review. Just like Ring’s change in sentencing procedure did not implicate the fundamental fairness of the criminal proceeding, Miller’s change in sentencing procedure for juvenile defendants does not implicate the fundamental fairness of the criminal proceeding. In other words, Miller did not create a watershed rule of criminal procedure, i.e., one that “requires the observance of ‘those procedures that ... are “implicit in the concept of ordered liberty,” ’ ” Teague, 489 U.S. at 311 (quoting other cases). Therefore, Miller does not fit within this Teague exception.
Having determined that Miller pronounced neither a substantive rule nor a watershed rule, we agree with the Court of Criminal Appeals — that the rule pronounced in Miller does not apply retroactively to cases on collateral review and that Williams’s sentence is constitutional and he is not entitled to a new sentencing hearing under Rule 32.1(a).
We now consider Williams’s contention that the Court of Criminal Appeals erred in holding that he was not entitled to relief under Rule 32.1(b) and (c), Ala. R.Crim. P. In addition to pleading that he was entitled to a new sentencing hearing under Rule 32.1(a), Williams pleaded his request for a new sentencing hearing under Rule 32.1(b) and (c), Ala. R.Crim. P. In his petition, Williams argued that he was entitled to a new sentencing hearing because, he said, his sentence was illegal, Rule 32.1(c), and that, because his sentence was illegal, the trial court was without subject-matter jurisdiction to impose the sentence, Rule 32.1(b).
In arguing that his sentence is illegal, Williams cites McClintock v. State, 773 So.2d 1057 (Ala.Crim.App.2000), and Ex parte Swearingen, 837 So.2d 246 (Ala.2001).
In McClintock, the petitioner pleaded in a Rule 32 petition that his sentence to life imprisonment for his 1987 conviction for first-degree escape was illegal because, he said, one of the convictions used to enhance his sentence under the Habitual Felony Offender Act (“the HFOA”) had been set aside. The Court of Criminal Appeals, recognizing that a conviction that had been set aside cannot be used to enhance another sentence and finding that, in fact, one of the convictions had been set aside and had been used to enhance his sentence for his 1987 conviction, held that the petitioner was entitled to a new sentencing hearing. In reaching its decision, the court considered, but rejected, the State’s argument that the petitioner’s sentence was legal because, even though the trial court had used an invalid conviction to enhance his sentence, the original sentence remained within the statutory range. The Court of Criminal Appeals reasoned that fundamental fairness required that a new sentencing hearing be conducted to “establish[ ] with certainty that the circuit court exercised the discretion allowed it” by the statutes in imposing the petitioner’s sentence. 773 So.2d at 1059.
In Ex parte Swearingen, this Court held that the defendant, like the petitioner .in McClintock, was entitled to a new sentenc *234 ing hearing even though his original sentence was within the statutory range. In Ex parte Swearingen, the trial court sentenced the defendant pursuant to a version of the. HFOA that was no longer in effect. Believing that it was required to impose a mandatory sentence of life imprisonment, the trial court sentenced the defendant to life imprisonment when, at the time of the defendant’s sentencing, a wide range of sentences was available for the trial court to impose. The State contended that, although the trial court was not required to sentence the defendant to life imprisonment, the sentence was legal because the sentence was within the statutory range under the. amended HFOA. We disagreed, stating:
“Merely because life imprisonment was within the statutory range available under the amended HFOA, given the wide sentencing range of 20 years’ imprisonment to life imprisonment available to the trial court under the amended HFOA, we cannot say that the trial court would have sentenced [the defendant] to life imprisonment had the court applied the amended version, of the HFOA.... Fundamental fairness requires that [the defendant] receive a new sentencing hearing to establish with certainty that the trial court exercised the discretion allowed under the amended HFOA.”
887 So.2d at 249.
Williams urges that fundamental fairness, as it did in McClintoek and Ex parte Swearingen, requires this Court to hold that he is entitled to a new sentencing hearing. McClintoek and Swearingen, however, are' distinguishable. In both of those cases, the trial courts relied on erroneous information in determining the sentences imposed. Here, the trial court did not rely on erroneous information. At the time of Williams’s sentencing, the law required the trial court to impose on a juvenile defendant convicted of a capital offense a sentence of life imprisonment without the possibility of parole. Williams’s sentence at the time it was imposed, unlike the sentences in McClintoek and Ex parte Swearingen, was legal and in accordance with the law. A subsequent change in the law does not change that fact. Additionally, because we have determined that Miller does not apply to sentences imposed before its pronouncement, Williams’s sentence is not illegal. Therefore, the decision of the Court of Criminal Appeals affirming the circuit court’s judgment denying Williams a new sentencing hearing does not conflict with McClintoek and Ex parte Swearingen.
When Williams, a juvenile defendant, was sentenced, the sentence of life imprisonment without the possibility of parole was the' only sentence available. The mandatory imposition of a sentence for a juvenile defendant is no longer constitutional in light of Miller; however, Miller did not foreclose the imposition of a sentence of life imprisonment without parole for a juvenile defendant. Because Miller did not categorically forbid a sentence of life imprisonment without parole for a juvenile defendant and because Miller does not apply retroactively, Williams’s sentence of life imprisonment without the possibility of parole is legal. The Court of Criminal Appeals did not err in holding that Rule 32.1(b) and (c) did not provide Williams grounds'for relief.

Conclusion

Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
BOLIN, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and MURDOCK, J., dissent.

. For purposes of this opinion, a juvenile defendant is defined as an individual who has been convicted of a, capital offense, see § 13A-5-40, Ala.Code 1975, committed before the age of 4 8.

. In Danforth v. Minnesota, 552 U.S. 264, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), the Supreme Court held that the Teague analysis for determining whether a new rule of constitutional law should be applied to cases on collateral review is not binding on state courts when determining an issue under state law. Although Williams asks this Court to abandon the Teague analysis in favor of an independent analysis, no compelling reason has been presented to do so. As this Court recognized in Exxon Corp. v. Department of Conservation & Natural Resources, 859 So.2d 1096, 1102 (Ala.2002) (quoting Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala. 334, 340, 110 So. 574, 580 (1925) (Somerville, J., dissenting)), the doctrine of stare decisis
“ 'is the only thing that gives form, and consistency, and stability to the body of the law. Its structural foundations, at least, ought not to be changed except for the weightiest reasons.’ ”